**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4052

MITCHELL WASHINGTON KING, a/k/a
Mitchel Washington King,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Frank W. Bullock, Jr., Chief District Judge.
(CR-95-108)

Argued: January 26, 1998

Decided: June 22, 1998

Before LUTTIG, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and MORGAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Joseph Korzen, SMITH, HELMS, MULISS &
MOORE, L.L.P., Greensboro, North Carolina, for Appellant. Clifton
Thomas Barrett, Assistant United States Attorney, Greensboro, North
Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United
States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On April 24, 1995, a federal grand jury in the Middle District of North Carolina returned an indictment charging Mitchell Washington King ("King") with one count of possession with intent to distribute 210.3 grams of "cocaine base (`crack')," in violation of 21 U.S.C. § 841(a)(1), and with one count of carrying or using a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). On June 22, 1995, the jury found King guilty of one count of possession with intent to distribute. King appeals, arguing first that there was insufficient evidence to support a conviction; second that the trial court erred in denying his motion to suppress; third that the district court erred in sentencing him based on possession of "crack" cocaine as the Government did not prove by a preponderance of the evidence that the cocaine base was sodium bicarbonate; fourth that the district court committed plain error in failing to give a lesser-included offense instruction on simple possession; and fifth that the trial court erred in failing to give a "missing witness" instruction.

On January 21, 1998, King filed a motion to supplement the appendix. The Court grants King's motion to supplement the appendix and affirms the district court on the merits.

I.

The defendant filed a motion to suppress the evidence seized during a March 24, 1995 search of 1020-C East Fifth Street, Winston-Salem, NC[1] by officers of the Winston-Salem Police Department and the Bureau of Alcohol, Tobacco and Firearms. The motion challenged

_____

[1] The apartment is located near the intersection of East Fifth Street and Martin Luther King, Jr. Drive, an area reputed as a high drug and violent crime area, according to Senior Police Officer Tracy Golding.

2

the sufficiency of the search warrant executed that day. Police arrived at the residence at 6:30 am,[2] and six officers approached the common doorway and entered. The team then ascended the stairway leading to Apartment C where they found a landing in front of the apartment, approximately six feet wide, that could hold only two members of the team. Those two officers knocked on the door, announcing "Police officer, search warrant," but they heard no noises inside. Three to five seconds later, the officers used a battering ram to open the door. Inside the residence, the police found Audley Casanova ("Casanova"), a co-defendant, asleep on a bed in one of the bedrooms. At the foot of his bed, the officers found a loaded 9mm firearm. The officers located King in the other bedroom from which there was a clear view of the police team approaching for approximately 25 feet, had King looked out the window.

The team then searched the apartment. In Casanova's room, the officers found five firearms, at least three of which were loaded; a bag of "crack" cocaine; a bag of powder cocaine; and $6,000 in U.S. currency in a hidden compartment found by removing the windowsill.

_____

[2] According to the testimony of Officer Golding, who was assigned to the Special Enforcement Team, a tactical unit within the police department responsible for a variety of high risk situations, the team assembled at the police department at 6:00 am. The officers were briefed on the search and were told that there could be three to four individuals in the apartment. Further, the officers were told that several informants had observed numerous firearms within the apartment and that one of the occupants had been seen carrying a 9mm at almost all times. This testimony was corroborated by Detective Ernestine Ruiz who testified that she informed the team there could be firearms within the residence, based on information from several confidential informants.

The search warrant contained information that individuals had observed as many as six firearms within the residence as early as January 1995 and as late as the week immediately preceding the search. There was testimony at trial that the three occupants of the residence were described as all being 250 pounds. One occupant was"Rhea" who was described as five feet nine inches tall, with short hair; one was "Mike" who was five feet five inches tall, 250 pounds and approximately 34 years old; and one was "Gus" who was six feet three inches tall, 250 pounds, approximately 36 years old, dark complexion and had a gold tooth. King is 31 years old, five feet and eight inches and 185 pounds.

3

Under the carpet along the wall, the officers found an additional $1,315 in U.S. currency. Counsel for both Casanova and King and for the Government stipulated that the bags were properly tested at the toxicology laboratory. The first bag contained 104.04 grams of cocaine base and the second bag contained 43.39 grams of cocaine base.[3] Based on this stipulation, the trial judge told the jury that the issue was not in dispute.

In the kitchen, the officers located the following items: two sets of scales located in a cabinet adjacent to the stove; a package of "crack" cocaine located in the exhaust fan above the stove;[4] a smaller amount of "crack" cocaine located in another cabinet; packaging materials customarily used for "crack" cocaine in a cabinet; and $18,510 in U.S. currency located in a light fixture above the sink. The parties stipulated that the package from the exhaust fan contained 104.91 grams of cocaine base and the package from the cabinet .89 grams of cocaine base. In a hall closet, the officers found currency in the amount of $330 and $4,900 in the pocket of two coats. Over 30 coats were in the closet. The police officers did not know the sizes of the two jackets containing the cash.

In King's room, which was located at the far end of the apartment from the kitchen and Casanova's room, the officers found a driver's license in King's name which listed a different Winston-Salem address, located on a television set; a receipt for payment of a driver's license fee and a document for community service work, both in King's name, seized from a wallet in a pair of pants within the room; a small piece of "crack" cocaine seized from the same pair of pants; $114 U.S. currency found under the bed's mattress; and a pager immediately adjacent to the bed. The small piece of cocaine was stipulated by all parties to be cocaine base weighing .5 grams.

During booking procedures, King gave his address as 1020-C East Fifth Street, Winston-Salem, N.C. and stated he was from Jamaica. However, King now claims he is a Canadian resident. King asserts

_____

[3] Although Detective Mitchell identified the smaller bag of drugs found in the windowsill as powder cocaine at trial, the parties stipulated at trial that the smaller bag also contained cocaine base.
[4] This package was found with the help of a drug-sniffing dog.

4

that two documents, his driver's license bearing another Winston-Salem address and a document introduced into evidence at trial which showed a Canadian address, prove he lied at booking and, in fact, he did not live at the 1020-C apartment.[5] Further, King's girlfriend, Tammy Jackson, testified that King spent the night in the 1020-C apartment because she and King, whom she has been dating since February 1994, had a fight that night. Otherwise, she testified King slept at her residence. It is not disputed that no fingerprints were taken at the apartment, no witnesses testified that King lived in the apartment or that King had been seen at the apartment before March 24, 1995, and the documents admitted into evidence did not show the apartment as King's address.

At the June 6, 1995 motions hearing, the Government argued that exigent circumstances existed for using the battering ram to enter, thereby making the search valid. Specifically, the Government contended that the view from the apartment gave the residents notice of the officers' approach and time to destroy evidence; a controlled buy had occurred within 72 hours; there was information that the residents were armed; and there was a reasonable basis to generally believe that drug dealers would destroy contraband. The Government contended these facts amounted to exigent circumstances. King also filed a motion to sever. The district court denied these motions. King proceeded to trial on June 21, 1995. At the conclusion of the Government's evidence, King moved for judgment of acquittal as to both counts pursuant to Fed. R. Crim. P. 29(a). The trial court denied the motion. King rested after presenting one witness, his girlfriend.

On June 22, 1995, the jury found King guilty of possession with intent to distribute and not guilty of possession of a firearm. King moved again for judgment of acquittal pursuant to Fed. R. Crim. P. 29 and for a new trial pursuant to Fed. R. Crim. P. 33. The trial court denied King's motions in a memorandum opinion filed August 23, 1995.

King was sentenced, on January 3, 1996, to 176 months incarcera-

_____

[5] The booking officer did notice a car with a Canadian license plate on the street.

5

tion, 5 years supervised release, and a $50 special assessment. King filed a timely notice of appeal.

II.

In reviewing the denial of a motion to suppress, the district court's factual findings are reviewed for clear error, and the legal conclusion that the Government's actions were justified is reviewed de novo. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 351 (1992).

A. Validity of the Search Warrant

Probable cause has been defined as it pertains to search warrants as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Additionally, the Court must look to the"totality of the circumstances" surrounding the search. See id. ; United States v. Clyburn, 24 F.3d 613, 617 (4th Cir.) (stating that a totality of the circumstances analysis "considers the informant's reliability and the basis of the informant's knowledge."), cert. denied, 513 U.S. 907 (1994). Great deference should be accorded a magistrate judge's assessment of the facts in determining probable cause. See Gates , 462 U.S. at 236.

If the district court's decision to admit evidence obtained as a result of a search warrant was based on a finding that the information available to the magistrate judge provided a substantial basis for concluding that probable cause existed, that reasoning will be upheld on appeal. See United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). The task of a reviewing court is not to conduct a de novo determination of probable cause, but to determine whether there is substantial evidence in the record supporting the magistrate judge's decision to issue the warrant. See Massachusetts v. Upton , 466 U.S. 727, 728 (1984).

King contends the affidavit in this case is deficient for several reasons. First, the affidavit is based on unsworn, hearsay statements from unnamed informants, and it did not specify how many informants existed. Second, the affidavit contained only conclusory assertions by

6

the police that the information provided in February 1995 came from a reliable informant. See Gates, 462 U.S. at 239 ("An officer's statement that `[a]ffiants have received reliable information from a credible person and believe' that heroin is stored in a home, is . . . inadequate [to establish probable cause].") (quoting Aguilar v. Texas, 378 U.S. 108 (1964), overruled by Gates, 462 U.S. at 238). Third, the affidavit described two "controlled buys" of crack cocaine by unnamed informants, but neither was actually monitored by the police.[6] Fourth, the affidavit does not corroborate the informants' story by any other means. Fifth, the affidavit relies on information from January 1995 that could be up to 51 days old, and information from February 1995 that was at least 23 days old, and there is no clear assertion that the informant providing this information was credible.

The defendant points to Clyburn as setting the standard that "controlled buys" must meet in order to find probable cause and argues that this case fails to meet that standard.[7] The controlled buys were

_____

[6] The affidavit describes the two "controlled buys" as one in the month of February 1995 and one within the 72 hours preceding the issuance of the affidavit. Each "controlled buy" was performed by officers watching the informant enter the "front door," noting that the informant was gone for a short time and then waiting for the informant to return to the officers' location with an amount of crack cocaine. The defendant asserts the "controlled buys" were inadequate as it is unclear whether this "front door" is the common front door on the first floor or the front door of Apartment C, the informant was out of view for a time, the informant's conversations were unmonitored and the amount of crack cocaine turned over is not specified.

[7] In Clyburn, the district court defined a "controlled buy" as follows:

> law enforcement officers search the informant to make sure that [the informant] does not have any illegal narcotics before the purchase; officers provide the informant with marked bills with which to purchase the drugs; officers place a body wire on the informant and monitor all conversations during the purchase; the informant is placed under visual surveillance during the purchase; and the informant turns over the contraband to the officers immediately after the purchase.

23 F.3d at 615 n.1. The difference between our case and Clyburn is that in this case, there were several informants providing information relied upon in the affidavit, the "controlled buys" were not monitored through a wire tap and it is unclear if there was a visual sighting of the informant actually entering Apartment C.

7

only a part of the evidence considered in the magistrate judge's finding of probable cause. However, even if we found that probable cause was lacking, the evidence seized in the instant case would be admissible so long as the warrant was issued by a neutral and detached magistrate judge and the executing officers' reliance on the warrant was objectively reasonable. See United States v. Leon, 468 U.S. 897, 926 (1984); United States v. Edwards, 798 F.2d 686, 690 (4th Cir. 1986) (stating officer's reliance must be "entirely unreasonable" for exclusion to be appropriate remedy). The Supreme Court has noted that rarely will searches pursuant to a warrant require a deep inquiry into reasonableness because a warrant issued by a magistrate judge normally suffices to establish that a law enforcement officer has acted in good faith. See Leon, 468 U.S. at 922.

The Leon Court outlined four situations in which an officer's reliance on a search warrant would not be reasonable: 1) the magistrate judge was misled by information in the affidavit that the officer "knew was false or would have known was false except for his reckless disregard for the truth;" 2) the magistrate judge "wholly abandoned his judicial role;" 3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and 4) "depending on the circumstances of the particular case, a warrant may be so facially deficient that the officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923; United States v. Clutchette, 24 F.3d 577, 581 (4th Cir. 1994).

The defendant relies on United States v. Wilhelm, 80 F.3d 116, 123 (4th Cir. 1996), to show that the officer's reliance was unreasonable because under the third Leon exception, the affidavit "did not provide the magistrate with a substantial basis for determining the existence of probable cause." In Wilhelm, the search warrant affidavit asserted that the informant was reliable and had personally observed residents selling marijuana as well as seeing marijuana in the residence itself. See id. at 118. The only corroboration provided was that the directions to the residence were verified, the description provided of marijuana "sounded accurate" and the informant's description of the packaging "sounded consistent" with how marijuana is packaged and sold. Id. Further, the affiant merely asserted that the informant "projected a truthfull [sic] demeanor" to support her credibility. Id. at 120. This Circuit held that "this affidavit fell far short of providing proba-

8

ble cause for a search warrant" pointing to such cases as United States v. Gibson, 928 F.2d 250 (8th Cir. 1991), to support that holding.**8** Id. We went on to hold that no Leon exception applied to such a "bare bones" affidavit. See id. at 123. This Circuit noted that any affidavit with less corroboration than United States v. Edwards, 798 F.2d 686 (4th Cir. 1986),**9** could not support a Leon exception. See id.

The affidavit in this case contained far more valuable information than the affidavit in either Wilhelm or Edwards. The affidavit gives directions to the residence and notes that the informant has seen drugs and firearms in the residence and on the residents' person. Further, the affidavit describes the persons allegedly living there, information which was corroborated by the officers through monitored "controlled buys." Therefore, the affidavit "provide[d] the magistrate with a substantial basis for determining the existence of probable cause," and Leon's third exception is applicable.

_____

**8** In Gibson, the Eighth Circuit found that probable cause was lacking and no exception applied when police relied on the informant saying husband and wife were dealing drugs from a particular address. See id. at 252. Further, the informant provided details including the claim that he was in the house, had seen drugs in the basement, a new shipment was expected in a few days, a pitbull was outside and a Doberman was inside, and three particular vehicles were parked at the house. See id. Police verified the house location and residents' names, described the vehicles that were outside, they observed a pitbull and noted house probably had a basement. See id.

**9** In Edwards, an informant told police he had been in a residence that contained a large quantity of marijuana and the affidavit asserted the informant had "the ability to reconginnize [sic] marijuana from past experience." See id. at 688. Further, the affidavit asserted the informant had indicated that the "marijuana may be moved by 4;00 [sic] AM on the [sic] 1-22-85 because the subject [Edwards] was planning a trip" and the informant described and gave the license number of a vehicle Edwards rented. See id. The Wilhelm Court noted that there was "far more valuable information" in the Edwards affidavit because the informant specifically indicated when, why and how the informant believed the marijuana was to be moved, establishing probable cause. See Wilhelm, 80 F.3d at 122.

9

B. Execution of the Search Warrant

King also asserts that the search warrant was improperly executed. "The Fourth Amendment protects the `right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures.'" United States v. Gastiaburo, 16 F.3d 582, 585 (4th Cir.) (quoting U.S. Const. amend. IV), cert. denied, 513 U.S. 829 (1994). As a guard against intrusive governmental action, Congress passed 18 U.S.C. § 3109 which states:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The Supreme Court has recently concluded, in an unanimous opinion, that a failure to knock and announce may create a Fourth Amendment violation, absent acceptable reasons for the failure. See Wilson v. Arkansas, 514 U.S. 927, 932 (1995). In the instant case, the officers clearly complied with the knock portion of the "knock and announce" provisions of § 3109 as the officers stated "Police officers, search warrant" outside Apartment C. However, King asserts that the officers did not completely comply with § 3109 because the officers only waited three to five seconds before using a battering ram to force entry into the apartment.

An officer must comply completely with the "knock and announce" provision of § 3109 unless there are exigent circumstances which warrant immediate entry. See United States v. Kennedy, 32 F.3d 876, 882 (4th Cir. 1994), cert. denied, 513 U.S. 1128 (1995). Whether exigent circumstances existed at the time of entry and whether the degree of the exigency was sufficient to justify the extent of the non-compliance is a fact-specific inquiry. See id. ; United States v. Lucht, 18 F.3d 541, 549 (8th Cir.), cert. denied, 513 U.S. 949 (1994). Exigent circumstances include the possible destruction of evidence and danger to police. See Kennedy, 32 F.3d at 882; United States v. Lalor, 996 F.2d 1578, 1584 (4th Cir.), cert. denied, 510 U.S. 983 (1993); United States v. Buckley, 4 F.3d 552, 558 (7th Cir. 1993), cert.

10

denied, 510 U.S. 1124 (1994); Mensh v. Dyer , 956 F.2d 36, 40 (4th Cir. 1991).

This Court has held that the police must have a"particularized basis for their belief that evidence would be destroyed," Lalor, 996 F.2d at 1584, which is not present here.**10** However, we find that exigent circumstances did exist in the form of fear for the safety of the officers. Firearms are well recognized as "tools of the trade" in the illegal drug business. See United States v. Hinds, 856 F.2d 438, 443 (4th Cir. 1988); United States v. Brockington , 849 F.2d 872, 876 (4th Cir. 1988), abrogated on other grounds by Bailey v. United States, 516 U.S. 137 (1995). We recognize that law enforcement personnel place themselves in harm's way when they enter areas of drug trafficking. See United States v. Bonner, 874 F.2d 822, 827 (4th Cir. 1989). While it is unclear whether a blanket rule permitting no-knock entries in narcotics cases is justifiable,**11** "[the Fourth Circuit] and others have recognized that narcotics searches might present exigent circumstances." Lalor, 996 F.2d at 1584; see also Bonner, 874 F.2d at 824 ("[E]ntrance into a situs of drug trafficking activity carries all too real dangers to law enforcement officers. That danger increased once the officers identified themselves and waited before the door, forced to interpret the import of the sounds within."); United States v. Couser, 732 F.2d 1207, 1208 (4th Cir. 1984).

The defendant relies on United States v. Stewart , 867 F.2d 581 (10th Cir. 1989), to argue that a finding of exigent circumstances based on officer safety is not warranted here. In Stewart, the police entered a house without knocking and announcing, relying only on the inherent danger of a defendant dealing in drugs to justify their

_____

**10** In Lalor, this Court held that a blanket suggestion that drugs are easily disposed of is not enough to create an exigent circumstance. See id. In this case, there is insufficient evidence to warrant a finding of exigent circumstances based on a fear that the evidence will be destroyed. There was no noise coming from the apartment implying the occupants of the apartment were awake or destroying evidence, nor was there information provided by informants that evidence was about to be moved or destroyed.

**11** **See United States v. Moore**, 956 F.2d 843, 850 (8th Cir. 1992) (finding such a blanket rule is not justifiable).

11

actions. See id. at 582. The Tenth Circuit rejected this reasoning as no particular facts supporting possible danger were present. See id. at 586.

Our case is distinguishable from Stewart for several reasons. First, the search warrant describes in great detail the firearms seen at the residence and carried by at least one of the inhabitants. See Lalor, 996 F.2d at 1584 (finding exigent circumstances based on risk of police safety when "a weapon had been found [nearby] when Lalor was arrested on January 24, 1990 and in his prior encounter with the police on January 6, 1990, Lalor was belligerent and made derogatory remarks about the police.") (footnotes omitted). Second, the apartment was located in an area plagued by drug dealing and violent crime. Third, as noted by the district court, the officers were "informed of drug activity in a building, [and the] presence of three or four people in the building." Fourth, the police were visible for 25 yards while they approached the apartment and could have been seen had someone been awake, though there was no evidence that anyone was watching. Fifth, the officers did announce their presence and purpose before entering, and as the district court noted, is it really the laws meaning that the officers were suppose to give the occupants of the apartment sufficient time to arm themselves while the officers waited outside?[12] Sixth, the circumstances in Stewart were more severe than here in that once the officers in Stewart entered with the battering ram, they threw full charge stun grenades which blinded and disoriented the occupants for five to ten seconds, and there was no information concerning firearms being present in the residence prior to the search. See 867 F.2d at 584. Finally, the defendant's assertion that the time of day made the likelihood of emergency slight does not affect the Court's exigent circumstances analysis. See United States v. Davis, 617 F.2d 677, 696 (D.C. Cir. 1979) (finding exigent circumstances when police arrived at 2:00 am, knocked upon the door, waited only 15-30 seconds, heard no noise within, but only observed lights inside). Therefore, the district court properly found that exigent circumstances existed.

_____

[12] In this case, it is likely at least Casanova may have armed himself, considering the armed weapon found at his feet, if the police had woken him up with their cry.

12

III.

In reviewing the sufficiency of the evidence, the appellate court "will sustain the jury's verdict `if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Jackson, 124 F.3d 607, 610 (4th Cir. 1997) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). "Substantial evidence is evidence that a reasonable finder of fact would accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. In determining the sufficiency of the evidence, the Court considers all of the evidence, both direct and circumstantial. See Glasser, 315 U.S. at 80; United States v. Veal, 402 F.2d 793, 794 (4th Cir. 1968).

To prove this offense, the government must prove beyond a reasonable doubt "knowing possession of the drug with intent to distribute it." United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 484 U.S. 834 (1987). "Actual possession of the drug is not required; constructive possession . . . suffices." United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1985), cert. denied, 484 U.S. 834 (1987). "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item." United States v. Morrison, 991 F.2d 112, 114 (4th Cir. 1993); Samad, 754 F.2d at 1096.

The Government must also prove an intent to distribute. Intent to distribute can be proven by the quantity and packaging of drugs so as to distinguish it from personal use. See United States v. Lamarr, 75 F.3d 964, 973 (4th Cir. 1996). Possession of a small quantity of drugs is an insufficient basis to prove intent to distribute. See United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990).

This Circuit has often held that when a defendant resides in a home where drugs and drug paraphernalia are found in common and accessible areas, there is sufficient evidence to convict that resident of possession with intent to distribute. See United States v. Morrison, 991 F.2d 112, 114-15 (4th Cir. 1993) (asserting that this case was unlike those where mere presence was involved because Morrison lived at the residence with her husband, police had observed activity consistent with house being used for distribution, Morrison was in the

13

kitchen where cocaine was present, and when asked for a "quarter," which referred to a quarter-size piece of crack, Morrison responded "she could not do it" as opposed to asking "what is a `quarter'"); Goldsmith v. Witkowski, 981 F.2d 697, 702 (4th Cir. 1992) (overturning conviction when Goldsmith did not reside or frequent the premises and there was no showing that he was alone with the drugs when the police entered even though drugs were close by and in plain sight at the time of arrest); see also United States v. Dunlap, 28 F.2d 823, 826 (8th Cir. 1994) (overturning conviction of visitor to home because mere presence in the apartment and possessions found in the kitchen were not enough to sustain conviction); United States v. Zeigler, 994 F.2d 845, 847-48 (D.C. Cir. 1993) (overturning conviction of frequent visitor based on crack cocaine, handguns and money found in laundry room that was inaccessible to guests); United States v. Davis, 562 F.2d 681, 685 (D.C. Cir. 1977) (holding sufficient evidence was presented to convict defendant who lived in the premises where drugs were openly displayed).

King was found in a room that contained .5 gram of cocaine which, taken alone, is consistent with personal use, though no implements for ingestion were found. See United States v. Webster, 639 F.2d 174, 188-89 (4th Cir. 1981) (reversing conviction for conspiracy to possess with intent to distribute narcotics where quantity and value of assumed drug purchases was consistent with maintenance of a personal habit). However, there was evidence that King resided at 1020-C East Fifth Street, and therefore, had access to common areas of the home. During the booking procedures, King gave his address as 1020-C East Fifth Street. Further, King was found sleeping in the apartment, in his own separate room, where his clothes and possessions were found. The evidence that King resided elsewhere is internally inconsistent. The driver's license, other paperwork, and his girlfriend's testimony are inconsistent in establishing an alternative address for the defendant. Therefore, the jury had sufficient evidence to find that King resided at the premises searched.

In addition to King's association with the cocaine and cocaine base found in the common areas of the apartment, an amount of cocaine base was found in the defendant's clothes, indicating an association with "crack" cocaine, and a pager and $114 were found in his room, lending to the inference that the defendant was associated with drugs.

14

Further, some of the indicia of drug distribution in the common areas were not well hidden,**13** furnishing evidence that the defendant was aware and involved in the drug distribution. The jury was instructed to and did consider constructive possession as evidenced by the fact that it posed a question to the court during deliberations concerning that very concept. Finally, when Casanova was arrested, he gave his name to the police as Robert King, Mitchell King's brother, supporting the inference that King and Casanova were associated.

These facts constitute sufficient evidence to support the jury's determination that King was guilty of possession with intent to distribute cocaine and cocaine base.

IV.

The standard of review on appeal of a sentencing judge's application of the United States Sentencing Guidelines depends on the issue presented by the appellant. If the issue turns primarily on a factual determination, the "clearly erroneous" standard applies. See United States v. Jones, 31 F.3d 1304, 1315 (4th Cir. 1994); United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989); United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 506 U.S. 926 (1992). If the issue turns primarily on the legal interpretation of a guideline term, the standard moves closer to de novo review. See Jones, 31 F.3d at 1315; Daughtrey, 874 F.2d at 217; Rusher, 966 F.2d at 873. Mixed questions of law and fact are reviewed on a sliding scale, depending on whether the issues are essentially factual or legal in nature, under the "due deference" standard. See Jones, 31 F.3d at 1315; Daughtrey, 874 F.2d at 217; Rusher , 966 F.2d at 873. Those alleged errors raised for the first time at the appellate level will be reviewed for plain error. See United States v. Mitchell, 1 F.3d 235, 239 (4th Cir. 1993).

The defendant asserts that the Government failed to prove, by a preponderance of the evidence, that the substance seized was crack cocaine. This issue was not raised at the district court level, and therefore, we review for plain error. See id. The plain error doctrine is

_____

**13** Two sets of scales, packaging materials and a small amount of cocaine base were in kitchen cabinets.

15

applied only where the error is "particularly egregious" and in "those circumstances in which a miscarriage of justice would otherwise result." Mitchell, 1 F.3d at 239 (quoting United States v. Young, 470 U.S. 1, 15 (1985)). "To establish plain error,[a defendant] must demonstrate that (1) the asserted defect in the trial was, in fact, error; (2) the error was plain; and (3) the error affected his substantial rights." United States v. Jackson, 124 F.3d 607, 614 (4th Cir. 1997) (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

In 1993, the Sentencing Commission added the following definition of cocaine base: "`Cocaine base' for the purposes of this guideline, means `crack.' `Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." United States Sentencing Commission, Guidelines Manual, § 2D1.1(c) n. (D) (Nov. 1997).

In United States v. James, 78 F.3d 851, 858 (3d Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 128 (1996), the Third Circuit held that a district court erred in applying the United States Sentencing Guideline enhancement for crack "in absence of proof by a preponderance of the evidence that the form of cocaine base [the defendant] sold was actually crack." See also United States v. Culpepper, 916 F. Supp. 1257, 1258 (N.D. Ga. 1995) (holding because the Government failed to prove the cocaine base was made with sodium bicarbonate, defendant was required to be sentenced on the basis of the cocaine powder guidelines), rev'd on other grounds, 116 F.3d 1493 (11th Cir. 1997). The defendant in James pled guilty. See 78 F.3d at 856. The indictment and the court during the plea colloquy referred to the narcotic as cocaine base. See id. The prosecutor used the terms interchangeably, i.e. "cocaine base or crack cocaine." See id. Further, at his sentencing, there was expert testimony that there are several ways of preparing cocaine base. See id. at 856-57. The James Court held that there was not enough evidence to say that the defendant had fully and voluntarily waived the issue when he pled guilty. See id.

The defendant asserts that we should reach a similar outcome. We disagree. The drugs involved in this case were stipulated to be "cocaine base" at trial, though the type of cocaine base was not defined. The stipulation allowed the Government to forgo testimony by a

16

chemist at trial. However, the stipulation was not the only evidence that the drug was "crack." Unlike in James , the indictment in this case indicated that the defendant was charged with distribution of "cocaine base (`crack')." While the indictment alone is not sufficient to prove the type of drug involved, see United States v. Fletcher, 74 F.3d 49, 53 (4th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 157 (1996), it is further evidence that the drug is "crack." In addition, the substances were introduced into evidence giving the jurors an opportunity to examine the drugs themselves and the Presentence Investigation Report specifically identifies the five packages containing controlled substances as "cocaine base (crack)." Most importantly, trained narcotic agents testified that four different Government exhibits, which were the drugs seized from the home, were "crack" cocaine. See United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir. 1976) (holding that lay testimony and circumstantial evidence is sufficient, in and of itself, to establish the identity of controlled substances); United States v. Boissoneault, 926 F.2d 230, 233 (2d Cir. 1991) ("Agents may also offer their interpretations of any physical evidence that is properly before the jury.") (citations omitted).[14] Therefore, no plain error occurred when the district court determined King's sentence by referring to the Guidelines' crack cocaine penalties.

V.

A district court's refusal to instruct the jury as to the elements of a lesser-included offense is reviewed for abuse of discretion. See United States v. Levy, 703 F.2d 791, 794 (4th Cir. 1983). However, matters not properly preserved at the district court level are reviewed for plain error. See Rogers, 18 F.3d at 268.

Rule 30 of the Federal Rules of Criminal Procedure reads, in perti-

_____

[14] The defendant attempts to refute the assertion that the lay testimony is sufficient by pointing to United States v. Abbas, 74 F.3d 506 (4th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 1868 (1996). While that case does use a chemist performing several scientific tests to conclude that the substance in question was heroin, there is nothing in the case that asserts it must be a chemist, and only a chemist, that makes that determination. The case discussed the issue of whether Abbas' Sixth Amendment Confrontation Clause rights were denied. See id. at 512-13.

17

nent part: "[n]o party may assign as error any portion of the charge [to the jury] or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." The objective of Rule 30 is to inform the trial judge of any possible error or omission in the instructions so that he might have an opportunity to make corrections. See United States v. Hecht, 705 F.2d 976, 978 (8th Cir. 1983). Failure to object prior to jury deliberations operates as a waiver. When a claimed error is not properly preserved, it may be reviewed only for plain error under Federal Rule of Criminal Procedure 52(b). See United States v. Bear Ribs , 722 F.2d 420, 424 (8th Cir. 1983); United States v. Grammatikos , 633 F.2d 1013, 1022 (2d Cir. 1980); United States v. White, 611 F.2d 531, 536 (5th Cir.), cert. denied, 446 U.S. 992 (1980); United States v. Honneus, 508 F.2d 566, 571 (1st Cir. 1974), cert. denied, 421 U.S. 948 (1975). Again, "[t]o establish plain error, [a defendant] must establish that (1) the asserted defect in the trial was, in fact, error; (2) the error was plain; and (3) the error affected his substantial rights." Jackson, 124 F.3d at 614 (citing Olano, 507 U.S. at 732).

There is obvious harm when the jury suspects that"the defendant is plainly guilty of some offense, but one of the elements of the charged offense remains in doubt, [because] in the absence of a lesser offense instruction, the jury will likely fail to give full effect to the reasonable doubt standard, resolving its doubts in favor of conviction." See Schmuck v. United States, 489 U.S. 702, 722 n.9 (1989). For the defendant to be entitled to a lesser-included offense instruction, the proof on the element that differentiates the two offenses must be sufficiently in dispute to allow a jury consistently to find the defendant innocent of the greater and guilty of the lesser offense. See United States v. Blankenship, 548 F.2d 1118, 1120 (4th Cir.), cert. denied, 425 U.S. 978 (1976). An instruction on a lesser-included offense is proper when the greater offense requires the jury to resolve a disputed factual element which is not required for conviction of the lesser offense or when there is no conflict in the testimony but the conclusion as to the lesser offense fairly may be inferred from the evidence presented. See United States v. Wright, 131 F.3d 1111, 1112 (4th Cir. 1997); United States v. Baker, 985 F.2d 1248, 1259 (4th Cir. 1993), cert. denied, 510 U.S. 1040 (1994); see also Sansone v. United States, 380 U.S. 343, 349 (1965). Reversal in such cases where the

18

instruction is not given is required only where evidence would permit a jury to rationally find the defendant guilty of the lesser offense. See Keeble v. United States, 412 U.S. 205, 208 (1973).

Possession of cocaine base is clearly a lesser-included offense of possession with intent to distribute cocaine base. See Baker, 985 F.2d at 1259; Schmuck, 489 U.S. at 721-22 (elements of a lesser-included offense must be a subset of those of the greater offense). The question is whether there was sufficient evidence available for a reasonable jury to find the defendant guilty of that lesser-included offense. This Circuit has held that the instruction is required if requested in drug distribution cases where substantial affirmative evidence supports the inference of personal use "unless, as a matter of law, the evidence would `rule out the possibility of a finding of simple possession, [because the quantity of drugs found was] so huge as to require that the case proceed on the theory that the quantity conclusively has dem- onstrated an intent to distribute.'" Baker , 985 F.2d at 1259 (quoting United States v. Levy, 703 F.2d 791, 793 n.7 (4th Cir. 1983)); see also Wright, 113 F.3d at 1113-16 (clarifying Baker and Levy holdings as meaning that a lesser-included instruction is only required when there is substantial affirmative evidence supporting the inference that the drugs were for personal use only as opposed for distribution).

In this case, there is some evidence to support the claim that a lesser-included instruction was warranted in that only a small quantity of drugs was found in King's room and in his belongings. However, a small quantity of drugs alone does not warrant such an instruction. See Wright, 113 F.3d at 1113. Further, in light of the substantial evi- dence supporting King's conviction for possession with intent to dis- tribute 210.3 grams of cocaine base, the large quantity of drugs involved,**15** the scales and packaging material found in the residence,

_____

**15** When the drug quantities are too large to support the conclusion that the drugs were only intended for personal use, no lesser-included offense instruction is required. See United States v. Espinoza, 827 F.2d 604, 615 (9th Cir. 1987) (instruction unnecessary when no one could claim that 69 pounds of cocaine (equaling approximately 31 kilograms of cocaine) was consistent with personal use); United States v. Thornton, 746 F.2d 39, 48 (D.C. Cir. 1984) (holding $44,000 of heroin was sufficient to deny a lesser-included instruction on simple possession); United States v. Seni,

19

and the lack of evidence that there were crack pipes or drug consumption paraphernalia found in the home or that the defendant was a cocaine abuser instead of a distributor, we cannot conclude that the district court committed plain error[16] in finding that a simple possession instruction was not warranted.

VI.

"A missing witness instruction may be given if the failure of a party to call a witness permits an inference that the witness's testimony would be unfavorable to the party's case." See United States v. Rukaj, 23 F.3d 404, **2 (4th Cir. 1994) (unpublished disposition) (citing 2 Charles Wright, Federal Practice and Procedure § 489 (1982)). The instruction is appropriate if two requirements are met:

> [f]irst, it must be shown that the party failing to call the witness has it peculiarly within its power to produce the witness . . . by showing [either: a)] that the witness is physically available only to the other party, or [b)] that, because of the witness's relationship with the other party, the witness "pragmatically" is only available to that party. . . . Second, the witness's testimony must "elucidate" issues important to the trial, as opposed to being irrelevant or cumulative.

Id.; see also United States v. Brooks , 928 F.2d 1403, 1412 (4th Cir. 1991); Rollins, 862 F.2d at 1297 (citations omitted).

_____

662 F.2d 277, 285 (4th Cir. 1981) (holding same with possession of 15 tons of marijuana (equaling approximately 13,620 KG of cocaine)), cert. denied, 455 U.S. 950 (1982); United States v. Rogers, 504 F.2d 1079, 1084 (5th Cir. 1974) (same with 427 pounds marijuana (equaling approximately 194 KG of cocaine)), cert. denied, 422 U.S. 1042 (1975). For comparison purposes, under the sentencing guidelines, someone convicted of possession with intent to distribute 150 to 500 grams of cocaine base receives the same sentence as someone convicted of possession with intent to distribute 3,000 to 10,000 kilograms of marijuana or 15 to 50 kilograms of cocaine.

[16] In adopting the plain error standard, we do not express an opinion regarding whether or not a lesser-included instruction would have been proper if it had been timely requested.

20

King's contention fails on the first prong of this test. The defendant merely asserts that H. Foy, the owner of the 1020-C East Fifth Street, and Marine Peterkin, whose affidavit secured a search warrant, were on the Government's witness list and that those witnesses were present in the courthouse, but the Government failed to call them to the stand. The defendant, however, does not give any reason why the witnesses were peculiarly within the Government's control or why he could not have called the witnesses to the stand. Therefore, this argument fails. See United States v. Milton, 52 F.3d 78, 81 (4th Cir. 1995) ("We have reviewed [the assignment of error asserting that the district court abused its discretion in denying defendant's request for a missing witness instruction] and find it to be without merit inasmuch as the "missing witness," Jothan Schnella, was equally available to both sides."); Brooks, 928 F.2d at 1412 ("There was no showing that Bowler was missing. Bowler was not under the control of the government. . . . Moreover, in this case the witness was equally available to both the defendants and the government. Either defendant could have subpoenaed him to appear and then examined him at trial. Neither chose to do so. . . . Under these circumstances, neither side was entitled to argue to the jury the absence of Bowler or to draw any inferences from his absence.").

AFFIRMED

21