**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 94-5764

LAUREN ERIC WILHELM,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Williams, Senior District Judge, sitting by designation.
(CR-94-9-MU)

Argued: December 7, 1995

Decided: April 3, 1996

Before ERVIN, MICHAEL, and MOTZ, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Ervin wrote the
opinion, in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Edmund L. Gaines, HOMESLEY, JONES, GAINES &
FIELDS, Statesville, North Carolina, for Appellant. Harry Thomas
Church, Assistant United States Attorney, Charlotte, North Carolina,
for Appellee. **ON BRIEF:** Sharon D. Jumper, JUMPER & BROAD-
WAY, Charlotte, North Carolina, for Appellant. Mark T. Calloway,
United States Attorney, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

Appellant Lauren Eric Wilhelm appeals the district court's denial of his motion to suppress evidence seized under a search warrant. State police obtained the warrant based only on a vague tip from an anonymous, unproven informant. We conclude that the warrant was not supported by probable cause and that the constitutionality of the search may not be established by the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). Therefore, we reverse the district court decision and remand for further proceedings.

I.

The facts of this case, as set forth in the appellant's brief and "accept[ed] and adopt[ed]" by the government, are as follows:

> On March 7, 1994, Detective Sandy Proctor of the Iredell County Sheriff's Office applied for a search warrant to search the home of the Appellant, Lauren Eric Wilhelm. On that same day, Proctor had received a telephone call from an individual who stated that he or she had observed marijuana in Wilhelm's home. In the affidavit for the warrant, Proctor stated the following:

> On 3-7-94 applicant received information from a reliable source who is a concerned citizen, a resident of Iredell County, a mature person with personal connections with the suspects and has projected a truthfull [sic] demeanor to this applicant. Informant stated to applicant the directions to this residence and the directions have been confirmed to be true by the applicant through surveillance on this date. The informant described the substance he/she believed to be marijuana and the informants [sic] description is consistent with the applicants [sic] knowledge of marijuana. Informant described transactions between residents and

2

patrons that purchase marijuana at this residence and his/her descriptions of these actions are consistent with applicants [sic] knowledge of how marijuana is packaged and sold. Informant has personally observed residents selling marijuana at this residence within the last 48 hours. Informant also observed a quanity [sic] of un-sold marijuana at this residence within the last 48 hours.

On the basis of this information, the [state] magistrate approved the application and issued a search warrant permitting the search of Wilhelm's home and all outbuildings and vehicles located on the property. The search resulted in the discovery of the contraband which was the subject of the indictment in this case.

At a hearing to consider a motion to suppress the evidence seized pursuant to the search warrant, two significant additional facts concerning the application for the warrant were revealed. First, Proctor confirmed that no additional information other than what appeared in the application was given to the magistrate. Thus, the warrant was issued solely on the basis of the material contained in Proctor's affidavit. Second, Proctor admitted that the informant was a person that she did not know and had never met prior to the telephone call, and that she did not meet with the individual after the call.

Wilhelm was named in a two-count indictment on April 6, 1994. The indictment charged him with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and use and carrying of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). He moved to suppress evidence obtained under the search warrant. The U.S. magistrate judge recommended denying this motion, and the district court adopted the magistrate judge's memorandum. Wilhelm then conditionally pled guilty to count 1, retaining the right to appeal the adverse ruling on the suppression motion. He timely appealed to this court under 28 U.S.C. § 1291.

3

II.

Issues of law are reviewed <u>de novo</u>. <u>Bose Corp. v. Consumers Union of the United States, Inc.</u>, 466 U.S. 485 (1984); <u>Rawl v. United States</u>, 778 F.2d 1009 (4th Cir. 1985), <u>cert. denied</u>, 479 U.S. 814 (1986). A district court's determination of probable cause under the Fourth Amendment is an issue of law, and is thus reviewed <u>de novo</u>. <u>United States v. Miller</u>, 925 F.2d 695, 698 (4th Cir. 1991).

When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant. <u>United States v. Blackwood</u>, 913 F.2d 139, 142 (4th Cir. 1990).

A.

Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment. <u>United States v. Harris</u>, 403 U.S. 573, 577 (1971). The Supreme Court addressed "the application of the Fourth Amendment to a magistrate's issuance of a search warrant on the basis of a partially corroborated anonymous informant's tip" in <u>Illinois v. Gates</u>, 462 U.S. 213, 217 (1983). An Illinois police department received an anonymous letter alleging that a Bloomington couple was involved in drug dealing; the letter specifically detailed how the couple travelled to Florida to buy drugs. <u>Id</u> . at 225. The police surveilled the couple and substantially corroborated the information in the letter. <u>Id</u>. at 225-27.

The Supreme Court agreed with the Illinois Supreme Court that the letter standing alone could not provide probable cause to believe that drugs could be found in the couple's car and home:"The letter provides virtually nothing from which one might conclude that its author is either honest or his information reliable; likewise, the letter gives absolutely no indication of the basis for the writer's predictions regarding the Gateses' criminal activities." <u>Id</u>. at 227; <u>see also United States v. Miller</u>, 925 F.2d 695, 698 (4th Cir.) ("An informant's tip is rarely adequate on its own to support a finding of probable cause."), <u>cert. denied</u>, 502 U.S. 833 (1991).

4

The Court then adopted a "totality-of-the-circumstances" test to determine whether probable cause supported a search warrant. Id. at 238. Two factors are key to this analysis: the informant's "veracity" or "reliability" and his or her "basis of knowledge." Id. at 233. Appellate courts should pay "great deference" to magistrates' findings of probable cause. Id. at 236. But this does not mean that warrants based on conclusory allegations should be upheld: "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Id. at 239.

In Alabama v. White the Supreme Court suggested how an anonymous tip might be corroborated sufficiently to provide the "reasonable suspicion" necessary for an investigatory stop.* 496 U.S. 325 (1990). The police received a call stating that a woman would leave a specified address in a particular car, go to a particular motel, and have with her about an ounce of cocaine in a brown briefcase. Id. at 327. As in Gates, the Court noted that the tip standing alone would not provide a reasonable suspicion because it gave no indication of the caller's reliability or the source for his or her information. Id. at 329. The Court concluded, however, that by the time the officers stopped the suspect, they had corroborated the tip sufficiently to provide reasonable suspicion. They had observed the woman leave the specified address within the timeframe predicted by the tipster, and watched her drive away in the specified vehicle, following the most direct route to the destination named by the caller, although they stopped her before she actually reached that destination. Id . at 331. The Court credited the tip's inclusion of a "range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Id. at 332 (quoting Gates, 462 U.S. at 245).

_____

*As reasonable suspicion implies a lower threshold than probable cause, Terry v. Ohio, 392 U.S. 1, 31 (1968), somewhat less corroboration of an anonymous tip in the context of an investigatory stop might be required than in the case of a search warrant. In this case, however, the standard for reasonable suspicion was not even met, so the White case is relevant to our analysis.

The Fourth Circuit has explained that in evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration. United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir.), cert. denied, ___ U.S. ___, 126 L. Ed. 2d 436 (1993). In the Lalor case, the court found an informant's tip reliable when the police corroborated the suspect's address, vehicle, and alias, and determined that he had been arrested for drug possession just a few days before the warrant was issued, confirming his involvement in drug activity. Id. at 1581; see also United States v. Miller, 925 F.2d 695 (4th Cir.) (upholding warrantless arrest based on informant's tip, which police substantially corroborated by observing the suspect), cert. denied, 502 U.S. 833 (1991); United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (upholding search warrant based on anonymous tip corroborated by a previously reliable informant's purchase of crack cocaine from the suspect).

The affidavit in this case did not adequately support the magistrate's finding of probable cause. It depended on information from an unnamed informant, and provided no indication of that informant's truthfulness or reliability. Proctor included conclusory descriptions apparently designed to establish the informant's trustworthiness. We are particularly concerned with Proctor's statements that the informant was a "concerned citizen," and "a mature person with personal connections with the suspects," who "projected a truthfull [sic] demeanor." See 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.4(a) at 738 (2d ed. 1987) ("[I]t should not be deemed sufficient that the police have alleged in a rather conclusory fashion that the person was `a responsible citizen of utmost character and integrity' or `a reputable member of the community.'").

A number of non-Fourth Circuit cases have addressed affidavits similar to the one at issue here. For instance, the Eighth Circuit addressed a similar factual situation in United States v. Gibson. 928 F.2d 250 (8th Cir. 1991). The police received an anonymous tip that a man and his wife were dealing drugs from a particular address. The caller provided a number of details, claiming that he had been inside the house and had seen the drugs in the basement, a new shipment of cocaine was expected in a few days, there was a pitbull outside the house and a doberman inside, and three particular vehicles were parked at the house. Id. at 252. The police drove by the house and

6

confirmed that the vehicles were as described, observed a pitbull, and noted that the house probably had a basement. Id . Using utilities records, the officer discovered the name of the account-holder for that address. Id. The Eighth Circuit held that this information did not amount to probable cause to issue a search warrant. Id. at 253. The court explained that the police had only corroborated "innocuous details" from the information given by the anonymous tipster, and "[t]here was neither surveillance nor observation of unusual civilian or vehicular traffic at the address, nor were there very short visits characteristic of drug trafficking." Id.; see also United States v. Mendonsa, 989 F.2d 366, 369 (9th Cir. 1993) ("[M]ere confirmation of innocent static details is insufficient to support an anonymous tip. The fact that a suspect lives at a particular location or drives a particular car does not provide any indication of criminal activity."); but see United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) ("Corroboration of apparently innocent details of an informant's report tends to indicate that other aspects of the report are also correct.").

In this case, the magistrate judge found sufficient indicia of reliability in the affidavit by simply accepting the unsupported conclusions of the affidavit, and overstating the substance of the information provided in that affidavit. For instance, he found"no internal inconsistencies in the affidavit itself which would lead a reader to question the informant's reliability." He noted that "a citizen-informer is presumptively reliable," and that in contrast to"vague or sketchy" information, where the information is "specific and based upon personal observation, showing a first-hand basis of knowledge, this supports a determination that the informant is reliable." The magistrate judge noted that the state magistrate had before him Detective Proctor's "affirmations as to the informant's maturity and veracity." The district court adopted the magistrate judge's recommendations wholesale.

We conclude that this affidavit fell far short of providing probable cause for a search warrant. Upholding this warrant would ratify police use of an unknown, unproven informant--with little or no corroboration--to justify searching someone's home. The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence. See, e.g., Payton v. New York, 445 U.S. 573, 585 (1980)

7

("`physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed'" (quoting United States v. United States Dist. Court, 407 U.S. 297, 313 (1972))); United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976) (the right to "sanctity of private dwellings," has been held to be the right "ordinarily afforded the most stringent Fourth Amendment protection"); Silverman v. United States, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

The minimal corroboration provided in this case simply was insufficient. The conclusion that an informant is reliable and mature based only on brief telephone conversations is dubious, and the affidavit does not disclose any basis for Proctor's conclusion that her tipster was a "concerned citizen." Moreover, the only corroboration Proctor provided was that the informant's directions to Wilhelm's home were correct. Almost anyone can give directions to a particular house without knowing anything of substance about what goes on inside that house, and anyone who occasionally watches the evening news can make generalizations about what marijuana looks like and how it is packaged and sold.

Because we conclude that the search warrant in this case was unsupported by probable cause as required by federal law, we need not reach Wilhelm's alternative argument that "the evidence in question must be suppressed because it was seized in contravention of North Carolina law by state agents."

B.

In United States v. Leon, the Supreme Court held that evidence obtained by "officers reasonably relying on a warrant issued by a detached and neutral magistrate" is admissible. 468 U.S. 897, 913 (1984). The officers--and the Court emphasized that "officers" should be read broadly to include those who obtain the warrant as well as those who conduct the search--must act based on an "objectively reasonable" reliance; "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23 & n.24. In footnote 24, the Court noted that

8

its Leon opinion should not be read to suggest that "an officer could obtain a warrant on the basis of a `bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." 468 U.S. at 923 n.24.

The good-faith exception does not apply in four situations: first, when the warrant is based on an affidavit containing"knowing or reckless falsity"; second, when the magistrate has simply acted as a "rubber stamp" for the police; third, when the affidavit does not "provide the magistrate with a substantial basis for determining the existence of probable cause"; and finally, when the warrant is so "facially deficient" that an officer could not reasonably rely on it. Id. at 923.

We find that the good-faith exception to the exclusionary rule should not apply in this case due to the "bare bones" nature of the affidavit, and because the state magistrate could not have acted as other than a "rubber stamp" in approving such an affidavit. See United States v. Laury, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993) (defining "bare bones affidavit" as one that contains"wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause"). Proctor's use of phrases such as "concerned citizen," "mature person" and "truthful demeanor" to describe someone with whom she had had only limited telephone conversations and no face-to-face contact cannot transform this into anything other than a bare bones affidavit. This conclusion is buttressed by her failure to provide any meaningful corroboration. Although the United States argues that Proctor in fact took a number of steps to corroborate the information in the tip, the Government conceded at oral argument that because the only evidence presented to the state magistrate was contained in Proctor's affidavit, Proctor's additional efforts at corroboration--such as checking motor vehicles records and using the Police Information Network to determine Wilhelm's prior drug activity--were irrelevant.

We follow the lead of two other Courts of Appeals in holding that the Leon good-faith exception does not apply in the case of a bare bones affidavit. In United States v. Leake, the Sixth Circuit, after finding that a warrant based only on an anonymous tip with scanty police corroboration was unsupported by probable cause, declined to rely on the good faith exception to the exclusionary rule. 998 F.2d 1359, 1367

9

(6th Cir. 1993). The court found that the detective who sought the search warrant did not act in good faith, because he knew that he needed to provide corroboration of the tip, but did not. Id. The court held that "[j]udged on objective criteria, a reasonably well-trained officer `would have known that the search was illegal despite the magistrate's authorization.'" Id.; see also United States v. Baxter, 889 F.2d 731, 734 (6th Cir. 1989) (refusing to apply the good faith exception where "the officer involved . . . had to realize that the source of the information against defendant was an unknown party who was unavailable and could not be demonstrated to be `reliable'").

The Fifth Circuit similarly found that Leon did not save a bare bones affidavit unsupported by probable cause. United States v. Barrington, 806 F.2d 529, 532 (5th Cir. 1986). A Mississippi police officer obtained a search warrant by using an affidavit stating that he had "received information from a confidential informant," known to him, who had "provided information in the past that . . . led to arrest and convictions." Id. at 531. The court found this warrant defective because it failed to provide sufficient information to allow a neutral determination of probable cause, and the police officer "had no good faith reason to believe the magistrate had made a probable cause determination." Id. at 532. The Fifth Circuit cited Leon's footnote 24, and noted that "[i]f one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the search, he cannot himself conduct the search based on his own bare bones affidavit." Id.; see also United States v. Jackson, 818 F.2d 345, 350 n.8 (5th Cir. 1987) (noting that although in that particular case the government offered no evidence of police officers' good faith, "the good-faith exception to the exclusionary rule is not available" in the case of a bare bones affidavit).

United States v. Edwards, 798 F.2d 686 (4th Cir. 1986), where we applied the good-faith exception, is not to the contrary. The affidavit in Edwards provided:

> On Jan 21, 1985 an informant told Tony Dimeo and Jack Elkins that he had been in the residence of Donald Leo Edwards located near Gulf, N.C. within 24 hrs. of 1-21-85 and had seen a large quanity [sic] of a vegetable substance know [sic] to him as marijuana. He has the ability to recon-

10

gonnize [sic] marijuana from past experience. The informant indicated that the marijuana may be moved by 4;00[sic] AM on the [sic] 1-22-85 because the subject Donald Leo Edwards is planning a trip. The informant stated that Donald Leo Edwards has rent [sic] a vehicle bearing license # RE-5549 a chevrolet Monte Carlo Green in color for this trip out of state.

798 F.2d at 688. This affidavit is certainly not rich in detail. Although we declined to determine its sufficiency, we did note that it contained more than a bare bones recital of conclusory statements, and found that the officer could reasonably rely on the warrant based on the evidence he had seen in investigating the case. Id . at 691.

In fact, minimal as it is, the Edwards affidavit contains far more valuable information than the affidavit at issue here. Significantly, the affidavit in Edwards, unlike that here, states that the informant had indicated that the contraband "may be moved by 4:00 A.M." on the next day because the suspect "was planning a trip" and the affidavit stated the make, model, color, and license plate number of the car the accused had rented to make "this trip out of state." Thus, the affidavit in Edwards "provided the magistrate with a substantial basis for determining the existence of probable cause," Leon, 468 U.S. at 923, in a way that the affidavit at issue here does not. Indeed, the affidavit in Edwards provided the magistrate with evidence that the suspect might abscond with the contraband in the very near future and so avoid punishment if the warrant was not issued. Nothing approaching this information is provided in the present affidavit. At oral argument, the government conceded that any affidavit less informative than that in Edwards would not be entitled to the Leon good faith rule. The affidavit here clearly is less informative than that in Edwards.

Moreover, and just as significantly, in Edwards the investigating officers had presented information other than the affidavit to the magistrate--information that the court found would have "without question" established probable cause had it been included in the affidavit. Id. at 689-91. Of course, in the case at hand, Officer Proctor provided no additional information of any kind, let alone information that would in itself have provided probable cause, to the state magistrate.

11

Other circuits have chosen to apply the good faith exception in similar cases. For instance, the Eighth Circuit upheld the trial court's determination--reviewed under a "clearly erroneous" standard--that Leon's good faith exception applied. United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991). That court held that suppression would be appropriate if the officer issuing the warrant was misled by the applicant's misrepresentation or knowing disregard for the truth. Id. at 254. In other words, "[e]vidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause." Id.; see also United States v. Mendonsa, 989 F.2d 366, 369-70 (9th Cir. 1993) (officer who "sought advice from county attorneys concerning the substantive completeness of the affidavit" before submitting it to the magistrate relied on the warrant's validity in good faith).

We believe, however, that Leon's rationale compels us to apply the exclusionary rule in this case. The Leon Court crafted the good faith exception because it believed that excluding evidence obtained when a magistrate or judge errs in issuing a search warrant would have no deterrent effect on those who issue warrants. 468 U.S. at 916. More-over, the Court explained, the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." Id. at 919.

We believe that this is not a case of "objectively reasonable law enforcement activity." Proctor could not reasonably rely on an unknown, unavailable informant without significant corroboration. Because Proctor presented to the magistrate nothing more than this unreasonable reliance, the Supreme Court's third exception to Leon applies: the affidavit here did not "provide the magistrate with a sub-stantial basis for determining the existence of probable cause." While perhaps not undertaken with deliberate bad faith, Proctor's use of phrases such as "concerned citizen," "mature" and "truthful demea-nor" strike this court as attempts to endue the affidavit with the appearance of genuine substance; this tactic suggests that Proctor her-self knew that probable cause was lacking, and thus that reliance on the resulting warrant was not reasonable. In addition, the state magis-trate appears to have acted as a rubber stamp in finding this affidavit sufficient to establish probable cause. Therefore, the search warrant

12

unsupported by probable cause is not saved by the <u>Leon</u> good-faith exception.

III.

This search was unconstitutional because it was based upon a warrant unsupported by probable cause, and the police could not have acted in good faith in relying on that warrant. We therefore reverse the ruling of the court below denying Wilhelm's motion to suppress and remand this matter to the district court for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>

13