UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

JOSEPH ALLEN JOHNSON,
　　　　　　　*Defendant-Appellant.*

No. 99-4751

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-98-262)

Argued: January 23, 2001

Decided: February 15, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
David A. FABER, United States District Court for the
Southern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Erin C. Murphy, SCHULMAN, TREEM, KAMINKOW, GILDEN & RAVENELL, Baltimore, Maryland, for Appellant. Philip S. Jackson, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Michael E. Kaminkow, SCHULMAN, TREEM, KAMINKOW, GILDEN & RAVENELL, Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

___

**OPINION**

PER CURIAM:

This case presents the sole question of whether officers executing a search warrant acted reasonably in relying on that warrant. We agree with the district court that they did reasonably rely on the warrant; accordingly, we affirm.

I.

During 1997, the Drug Enforcement Administration and local law enforcement officers conducted an investigation of narcotics trafficking in Baltimore County Maryland, which centered around Jason Bobbitt. During that investigation, Judge Barbara Howe, of the Circuit Court for Baltimore County, issued fifteen wiretap orders for various telephones and pagers associated with Bobbitt and one of his suppliers, William Christopher Beggs. Monitoring calls to and from these numbers led police to believe that a person named "Joe" residing at 1818 Rambling Ridge Road was involved in a drug transaction with Beggs and may have had evidence or contraband at that address. On December 9, 1997, Judge Howe signed a search warrant for apartment T-2 at 1818 Rambling Ridge Road in Baltimore.

An eleven page affidavit signed by local law enforcement officers supported the application for the search warrant. The affidavit first set out facts learned during the investigation establishing that Bobbit was a narcotics dealer and that Beggs was one of Bobbitt's suppliers. The affidavit next detailed three recorded conversations between Beggs and a man named "Joe." In all three calls "Joe" used a telephone registered by the telephone company to apartment T-2 at 1818 Rambling Ridge Road.

In the first call, Beggs called "Joe" soon after returning from New York City, where the police had monitored him. The officers stated

in the affidavit that they knew "based on their training, knowledge and experience, that Beggs picked up a substantial quantity of cocaine on this trip." According to the affidavit, "Joe" told Beggs in the recorded call that he wanted to "hook up." Beggs and Joe therefore agreed to meet at a place called "Dizzy Izzy's" at 1:00 PM. The officers stated that they knew "based on their training, knowledge and experience" that through this expression "Joe is telling Beggs that he wants to meet him to get a supply of cocaine."

The affidavit next stated that, in a second recorded call, Beggs called "Joe" and stated that "Joe" did not attend their meeting. "Joe" told Beggs that he "got hung up shopping with his girl." However, "Joe" told Beggs that "he still want[ed] to get together." Beggs asked "when?" "Joe" responded, "Now." Beggs then said, "One." At that point, "Joe" "agree[d]" and Beggs said that "he [wa]s on his way." The officers stated that, from this conversation, they knew, "based on their training, experience and case knowledge" that Beggs was "delivering a quantity of cocaine to Joe" and "that Beggs [wa]s a kilogram dealer of cocaine and that when they refer[red] to 'one' that they [we]re referring to a kilogram of cocaine."

The affidavit then stated that, in a third recorded call, Beggs telephoned the same number and asked to speak to "Joe." The person who answered the telephone indicated that "Joe" was not there. Beggs responded that he was "right in front of '1818'."

In addition to this factual information, the affidavit also established over six pages the extensive narcotics training and experience of the three investigating officers. This section of the affidavit explained many common habits and practices of narcotics traffickers.

On December 9, 1997, when law enforcement officers executed the warrant on 1818 Rambling Ridge Road, they recovered cocaine, a handgun, over $ 30,000 in United States currency and personal papers reflecting Johnson's residency in the apartment. The government charged Johnson with a single count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 (1994).

Johnson filed a pretrial motion to suppress the evidence seized from the apartment at 1818 Rambling Ridge Road. The district court

found that, although the affidavit in support of the warrant did not provide probable cause for the search, the officers executing the search had acted in reasonable good faith. Accordingly, the district court found that the good faith exception to the exclusionary rule controlled and it refused to suppress the evidence. Subsequently, Johnson pled guilty, preserving the right to appeal the denial of his suppression motion.

## II.

The fruits of a search executed under a warrant approved by a detached and neutral magistrate, even if not supported by probable cause, will not be suppressed if the officers executing the warrant proceeded in reasonable reliance upon the warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984). Thus, the denial of Johnson's suppression motion was proper — even if the warrant was defective — if the officers proceeded in objective good faith as set out by the Supreme Court in *Leon*.

The crux of the good faith exception is whether the executing officers' reliance upon the warrant was objectively reasonable. *Leon*, 468 U.S. at 921-22. Although the *Leon* Court stated that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness," *id.* at 922, the Court provided four situations in which reliance upon a warrant would not be reasonable. *Leon* teaches that reliance on a warrant is not reasonable where (1) the issuing magistrate or judge "was misled by information in an affidavit that the affiant knew was false, or would have known was false except for his reckless disregard for the truth," (2) the issuing magistrate or judge "wholly abandoned his judicial role," (3) the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant "is so facially deficient" that the executing officers could not reasonably presume it valid. *Id.* at 922.

As this court has recognized, the Supreme Court also established in *Leon* that an officer may not reasonably rely upon a warrant obtained on the basis of a "bare bones" affidavit. *See United States v. Wilhelm*, 80 F.3d 116, 121-122 (4th Cir. 1996); *Leon*, 468 U.S. at 915, 922 n.24. A "bare bones" affidavit is one that contains "wholly

conclusory statements, which lack the facts and the circumstances from which a magistrate can independently determine probable cause." *Wilhelm*, 80 F.3d at 121 (citing *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993)).

In his brief, Johnson maintains that the good faith exception was not triggered in this case because law enforcement officers searched his apartment pursuant to a warrant based on a "bare bones" affidavit. At oral argument, defense counsel retreated from the contention that the affidavit was "bare bones," and argued instead that the good faith exception did not apply under the third *Leon* exception, because the affidavit was "so lacking in indicia of probable cause" that reliance upon it by the officers was objectively unreasonable. We consider both contentions.

A.

The affidavit in this case cannot be characterized as "bare bones." A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others — usually a confidential informant — without corroboration or independent investigation of the facts alleged. *See, e.g.*, *Wilhelm*, 80 F.3d at 117-118; *Laury*, 985 F.2d at 1312. We see no reason to find that an affidavit, like that at issue here containing extensive facts learned through a long police investigation and related on the personal knowledge of the affiants, constitutes a "bare bones" affidavit.

It cannot be said that the affidavit challenged here is so "wholly conclusory" that a neutral magistrate could not "independently determine probable cause." The affidavit contained eleven pages of information upon which Judge Howe could independently determine whether probable cause existed. The officers provided a detailed factual basis for their conclusion that evidence could be found at 1818 Rambling Ridge Road. They clearly set forth evidence of recorded conversations and controlled buys that indicated Beggs was a known drug trafficker. They then set out the facts of three recorded telephone conversations between Beggs and a person named "Joe" using a telephone at 1818 Rambling Ridge Road. In those conversations Beggs and "Joe" twice attempted to meet. Moreover, Beggs and "Joe" used language in those conversations — set out in detail in the affidavit —

that the officers believed to be code words for a narcotics transaction. The officers provided the judge with the details of their training and experience, upon which they relied to determine that the language used in those conversations was code for a narcotics sale.

Johnson, in his brief, asserts that this affidavit is "bare bones" because the officers concluded, without sufficient factual support in the affidavit, that the "code" words — innocent conversation on its face — represented a drug transaction. However, a "bare bones" affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause. In determining whether this affidavit was "bare bones," our inquiry is only into whether the officers provided Judge Howe with sufficient factual support from which she could independently conclude whether probable cause existed. This affidavit contained substantial factual support. The officers presented pages of information detailing the evidence they had collected, their training and experience, and the conclusions they drew between the two. From this, it was for the judge to conclude the existence *vel non* of probable cause.

## B.

We next consider Johnson's contention that the good faith exception should not be applied here because the search warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In many ways, determination of this question involves an inquiry similar to our consideration of a "bare bones" affidavit.[1]

Again, it was not unreasonable for the officers to rely upon a warrant supported by this affidavit. The affidavit provided substantial factual support, based on a long investigation and recorded evidence, for the officers' belief that evidence of criminal activity might be found at 1818 Rambling Ridge Road. At a minimum, the affidavit estab-

---

[1]A "bare bones" affidavit is usually insufficient because it falls into Leon's third exception, as "not providing the magistrate with a substantial basis for determining the existence of probable cause." *See Wilhelm*, 80 F.3d at 123 (finding "bare bones" affidavit insufficient for this reason).

lished that "Joe," using a telephone at 1818 Rambling Ridge Road, twice arranged to meet a known narcotics trafficker. During these conversations, Beggs and "Joe" used language that the officers believed to be code to arrange a narcotics transaction. The officers provided Judge Howe with the substance of those conversations, and the training and experience leading them to this conclusion.

In *United States v. Cancelmo*, the Second Circuit also considered a search warrant issued on an affidavit setting out the substance of recorded conversations between narcotics traffickers using "narcotics code." *See United States v. Cancelmo*, 64 F.3d 804 (2d Cir. 1995). In the *Cancelmo* affidavit, officers set out the details of several recorded conversations between a known drug trafficker and another person. *Id.* at 805-806. The conversations were, on their face, innocent; however, the officers stated in the affidavit that their experience led them to believe that these conversations actually concerned narcotics transactions. *Id.* at 806. Cancelmo complained that the officers executing the search warrant were not entitled to the good faith exception because the affidavit did not contain objective facts linking him to criminal activity, and was therefore both "bare bones" and lacking "any indicia of probable cause." *Id.* at 807. The court found that the legal question of whether an affidavit of this type established probable cause was "a close one." *Id.* at 808. However, specifically because the legal question was close, the court found that it was not unreasonable for the officers to rely upon the magistrate's decision that probable cause did exist in issuing the warrant. *Id.* at 808.

For the same reasons as those discussed in *Cancelmo*, the affidavit in this case similarly is not "so lacking in indicia of probable cause" as to make reliance upon it unreasonable. Indeed, here too, it is a close question whether the affidavit was sufficient to establish probable cause. *See United States v. Hyppolite*, 65 F.3d 1151, 1157-58 (4th Cir. 1995) (holding that, when law is unclear as to whether a factor relied upon in affidavit can establish probable cause, officers are entitled to good faith exception even if such factor should not have been considered). It was not for the police officers, untrained in the law, to know whether the magistrate correctly concluded that the officers' inferences that these facially innocent conversations actually concerned narcotics was enough to establish probable cause.[2] It was

---

[2]Moreover, we are not limited to the face of the affidavit in our good faith inquiry. When determining the objective reasonableness of the offi-

therefore reasonable for the officers to believe that this warrant was valid.

Ultimately, this case presents us with the same concern the Supreme Court expressed in *Leon*. "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. "[A]n officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. 'Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" *Id.* at 921. Johnson essentially complains that the affidavit upon which his warrant was based did not contain enough information to make out probable cause. Under the good faith exception, however, whether probable cause existed was for Judge Howe to determine. Once the judge determined probable cause existed, the officers needed only to be sure that their reliance upon the warrant was reasonable. Here their reliance was certainly reasonable, and the good faith exception applies.

Having found that the district court properly applied the good faith exception, we need not consider whether the court erred in ruling that the affidavit was issued without probable cause. *See Edwards*, 798 F.2d at 690 (declining to decide whether warrant was issued on a showing of probable cause when good faith exception found to apply). Accordingly, denial of the suppression motion was proper and the judgment of the district court is

*AFFIRMED.*

---

cers, we are to look at all the facts presented to the magistrate. *See United States v. Legg*, 18 F.3d 240, 243-44 (4th Cir. 1994). Here, Judge Howe had issued the previous wiretapping orders and knew many details of this investigation outside the four corners of the warrant. The officers knew that Judge Howe possessed this information when they presented their affidavit. This bolsters the reasonableness of the officers' presumption that the warrant was valid and constitutional.