**UNITED STATES of America**

v.

**Timothy DEQUASIE**

No. CR.A. 502–00228.

United States District Court,
S.D. West Virginia,
Beckley Division.

Feb. 20, 2003.

Timothy DeQuasie, Oak Hill, WV, pro se.

S. Mason Preston, Preston & Weese, Lewisburg, WV, Edward H. Weis, Assist. Fed. Public Defender, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

### I.

Defendant is charged in a single count indictment alleging possession of a firearm by a prohibited person. The charge emanates from two searches of Defendant's residence authorized by separate search warrants, the second search having produced a gun. Defendant challenges the sufficiency of the first search warrant and claims that its invalidity precludes the use of the gun against the defendant.

On March 18, 2002, Detective–Corporal Brown of the Fayette County Sheriff's Department [1] was contacted by Shawn Bandy who reported that his wife, Lora, had been missing for two to three days. Mr. Bandy also stated that his wife's sister-in-law, Tiffany Mason, had called to tell Mr. Bandy that Lora was being held against her will by Mr. Dequasie. Mr. Bandy relayed that Tiffany had told him that every time Lora attempted to leave Mr. Dequasie's residence, Mr. Dequasie would give her crack cocaine and had thereby induced Lora into a stupor to prevent her from leaving.

Deputy Webb met with and obtained statements from Mr. Bandy and his mother-in-law, Cynthia Mason, and completed a missing person's report. Mr. Bandy and Ms. Mason both stated that Tiffany and Lora had gone together to Mr. Dequasie's residence and that Tiffany reported Lora's inability to leave as well as seeing large quantities of guns and drugs in the residence. They said Tiffany had also reported that Mr. Dequasie threatened to kill any family members that attempted to rescue Lora.

Later that same day, Detective–Corporal Sizemore applied for and obtained a warrant from Fayette County Magistrate Dale Payne to search Mr. Dequasie's residence for both Lora Bandy and Tiffany

---

**1.** All of the officers referred to herein are members of the Fayette County Sheriff's Department. Several officers of the Trilateral Drug Enforcement Network Team (TRIDENT) assisted in execution of the second warrant as well as the second search.

Mason. In the affidavit attached to his application, Detective–Corporal Sizemore included Tiffany Mason's statements, as relayed by Mr. Bandy and Cynthia Mason, that "Lora was being held against her will by Mr. Dequasie and that every time that she would try to leave he would give her more crack cocaine and induce a stupor from which she was unable to stay in her right mind." Detective–Corporal Sizemore also stated in the affidavit that "Timothy Dequasie is reportedly associated with Giuseppe Wallace." The affidavit further included a description of the residence provided by Detective–Corporal Brown who went to the residence and "was able to observe several subjects at this residence." Detective–Corporal Sizemore concluded the affidavit by stating that "it appears likely that MS. [sic] Bandy's life may be in jeopardy if she continues to stay at this residence." No attempt was made to interview Tiffany Mason prior to Detective–Corporal Sizemore's application for a search warrant.

Detective–Corporal Sizemore and other officers from the Fayette County Sheriff's Office executed the warrant. Lora Bandy was found unharmed. Detective–Corporal Sizemore reported that while executing the warrant, he smelled the strong odor of marijuana and observed a small quantity of green vegetable matter that appeared to be marijuana near the door of the residence. Officers patted down Mr. Dequasie and discovered two cell phones on his person. Based on these facts, Detective–Corporal Sizemore had officers remain at the residence to "secure the scene and prevent the destruction of evidence," while he left to obtain a second search warrant.

In the affidavit to support the second warrant, Detective–Corporal Sizemore noted his extensive experience in drug enforcement and stated that he "detected the strong odor of marijuana ... (and)

observed a small quantity of green vegetation which appeared to be marijuana." He further reported finding the two cell phones on Mr. Dequasie's person, noting that "in my experience it is quite common for individuals engaged in the sale of drugs to maintain multiple cell phone accounts." Sizemore again relayed Tiffany Mason's statements to Mr. Bandy and Cynthia Mason, this time including that Tiffany had stated that, along with large quantities of drugs and guns, Mr. Dequasie also "had approximately $20,000.00 in cash at his residence." Detective–Corporal Sizemore stated in conclusion that although the information provided by Tiffany Mason "cannot be judged as to reliability," the combination of his observations and that information "tend to confirm that Mr. Dequasie probably has in his possession some quantity of a controlled substance."

Execution of the second warrant resulted in the following items being seized: $699.00, a loaded .32 Long revolver (found under a couch cushion), a battery operated Pointscale, 17 assorted .32 revolver shells, a section of copper scrub pad (reported as commonly used to make screens for crack pipes), a crack pipe stem, a spring-loaded roach clip, a cell phone bill in Mr. Dequasie's name, a plastic Zip-loc bag with a white powder residue inside, a package of E–Z Wider rolling papers, and two cell phones. Mr. Dequasie admitted at this time that he had smoked marijuana and that he had been convicted of domestic battery. Mr. Dequasie was then arrested for being a prohibited person in possession of a firearm and possession of a controlled substance.

## II.

■ The present case involves federal court admissibility of evidence obtained by state officers pursuant to search warrant.

Challenges to the validity of the search warrant are thus tested by the Fourth Amendment and not state law standards. *See United States v. Clyburn,* 24 F.3d 613 (4th Cir.1994). In evaluating a judicial officer's determination that probable cause existed to issue a search warrant, a reviewing court is not permitted to examine the judicial officer's findings de novo. *See Illinois v. Gates,* 462 U.S. 213, 231–38, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Instead, a reviewing court's task is to determine whether there is substantial evidence in the record supporting the judicial officer's decision to issue a warrant. *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984).

■■■■ A court considering whether probable cause existed to issue a warrant must consider only the information provided to the magistrate. *United States v. Wilhelm,* 80 F.3d 116, 118 (4th Cir.1996). In evaluating probable cause, a court examines the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause to search is established when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. Probable cause may be based upon information from any reliable source or sources. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Courts generally find probable cause where there is at least some degree of corroboration as well as some indicia of reliability. *United States v. Lalor,* 996 F.2d 1578 (4th Cir.1993).

The fruits of an improperly issued warrant are not necessarily poisonous. The Supreme Court established the "good faith" exception to the exclusionary rule in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which can save the admissibility of evidence discovered through the execution of a faulty search warrant. The Supreme Court in *Leon* succinctly set forth the parameters of the exception:

> We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion ... Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

*Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405 (citations and footnotes omitted).

The Fourth Circuit has summarized the four situations where an officer's reliance on a search warrant would not be reasonable:

> (1) the magistrate was misled by information in the affidavit that the officer "knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role ..."; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient ... that the officers cannot reasonably presume it to be valid."

*United States v. Clutchette,* 24 F.3d 577, 581 (4th Cir.1994) (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. 3405).

The Fourth Circuit has thus adopted a two-step analysis in reviewing either a district court's grant or denial of a motion to suppress:

(1) whether the "good faith" exception to the exclusionary rule, as enunciated in *United States v. Leon* and its progeny, applies to this case; and (2) whether a neutral and detached magistrate issued the search warrant, which contains a particular description of the place to be searched and things to be seized, based upon probable cause and supported by oath.

*Clutchette,* 24 F.3d at 579. *See also United States v. Bynum,* 293 F.3d 192 (4th Cir.2002) (proceeding directly to a determination of good faith under *Leon* prior to addressing probable cause). This Court adopts the Fourth Circuit's analysis and will look first to the "good faith" exception and, if this exception is inapplicable, then to a determination of whether or not there was probable cause to support the warrant.

### III.

The Court held a hearing on the present motion on February 3, 2003. As a result of oral argument, the Court granted the United States additional time to file a supplemental response and granted the Defendant additional time thereafter to file a supplemental reply. These supplemental memoranda both dealt specifically with the *Leon* exception.

The United States essentially argues that the officers reasonably relied on the validity of the first warrant because of the inapplicability of each of the four instances described in *Leon* as preventing the "good faith" exception. First, the United States argues that there is no evidence that Detective–Corporal Sizemore provided any information he knew or should have known was false. For this point, the United States relies on the proposition that the first warrant was sought out of concern for an individual's safety and that the individual was actually found at the residence.

Furthermore, the United States points to Officer Sizemore's statement in the second affidavit, that he could not judge Ms. Mason's allegations of drug related criminal activity until he corroborated the evidence with his own observations, as an illustration of Sizemore's good faith.

Second, the United States argues that the magistrate did not abandon his judicial role. In support of this point, the United States relies on the affidavit in support of Sizemore's application for the warrant which named the source of his information and listed Sizemore's experience and knowledge of relevant facts. According to both parties, no additional evidence was presented to the magistrate.

Third, the United States argues that there is some support for a finding of probable cause found in the affidavit. The United States points again to the information that Sizemore provided in the affidavit as supporting a reasonable official belief in the warrant's validity. The United States also argues two facts—that Sizemore swore under oath that he believed probable cause existed and that the magistrate reaffirmed this belief by issuing the warrant—are dispositive of this issue.

Finally, the United States argues that the warrant was not so facially deficient that the officers could not reasonably presume its validity. The United States relies on the proper form of the warrant, the fact that the affiant supplied some evidence to support each element of the crime, the particularity of location and scope of the search, and the listing of specific evidence to be sought.

This Court finds the United States' arguments unpersuasive. This case involves a "bare bones" affidavit of the type analyzed in *United States v. Wilhelm,* 80 F.3d 116 (4th Cir.1996). In *Wilhelm,* the Court observed, "[i]n footnote 24 (in *Leon* ), the Court noted that its *Leon* opinion should

not be read to suggest that "an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.'" *Id.* at 121 (citing *Leon,* 468 U.S. at 923 n. 24, 104 S.Ct. 3405). The *Wilhelm* Court went on to find that "the good-faith exception to the exclusionary rule should not apply in this case due to the 'bare bones' nature of the affidavit, and because the state magistrate could not have acted as other than a 'rubber stamp' in approving such an affidavit." *Wilhelm,* 80 F.3d at 121. The Fourth Circuit later clarified that:

> A 'bare bones' affidavit is one in which an affiant merely recites the conclusions of others—usually a confidential informant—without corroboration or independent investigation of the facts alleged ... However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause. In determining whether the affidavit was 'bare bone,' our inquiry is only into whether the officers provided Judge Howe with sufficient factual support from which she could independently conclude whether probable cause existed.

*United States v. Johnson,* 4 Fed. Appx. 169, 172–173 (4th Cir.2001) (unpublished).

The Fourth Circuit recently addressed the *Leon* exception in *United States v. Bynum,* 293 F.3d 192 (4th Cir.2002). In *Bynum,* the Court analyzed the district court's suppression of evidence based on a "bare bones" affidavit in support of the warrant. Of particular interest to the present motion, the Court in *Bynum* summarized and distinguished *Wilhelm* in overturning the district court's suppression:

In *Wilhelm,* after receiving an anonymous telephone tip that an informant had seen marijuana being sold in the defendant's home within the past 48 hours, an officer applied for a search warrant. The officer did not meet the informant before or after receiving the tip and did not know the informant ... The officer's only corroborating information was that she had confirmed directions to the residence and that the description of the marijuana and of the sale transactions was consistent with her knowledge of marijuana packaging and sales ... Here, unlike *Wilhelm,* the officer relied not on an unknown informant but one whom he knew and who had provided reliable information in the past that law enforcement officers had 'verified.'...Furthermore, the affidavit provided explicit corroboration of possible illegal drug activity at the search site, which far exceeds that in the affidavit at issue in *Wilhelm* ... In contrast, the only corroboration offered by the affiant in *Wilhelm* to bolster the anonymous tipster's information was accurate directions to the defendant's house, which, as we noted, were available to 'almost anyone,' and which did not reveal anything about the defendant's criminal activities. Nor, again unlike *Wilhelm,* is there an indication in this case of any sort of bad faith by the officer who prepared the affidavit.

*Bynum,* 293 F.3d at 196–198 (internal citations omitted).

The present case is nearly identical to the circumstances present in *Wilhelm.* Here, the only information included in Detective–Corporal Sizemore's affidavit as to Lora's alleged kidnaping, and Mr. Dequasie's alleged drug activities, came from Tiffany Mason. Although officers took statements from both Mr. Bandy and Cynthia Mason, these statements were only relating information they received from

Tiffany Mason. There is no indication that Detective–Corporal Sizemore has ever received other information from Tiffany Mason or that he had ever even met Tiffany Mason prior to obtaining the first warrant. Sizemore admitted in the affidavit for the second warrant that Tiffany Mason's reports "cannot be judged as to reliability." Neither Sizemore nor Magistrate Payne had any basis to justify reliance on the statements attributed to Tiffany Mason.

Under *Bynum* and *Wilhelm*, corroboration of the information by Sizemore may have been sufficient to save the validity of the search. In this case, however, the only corroboration provided prior to the issuance of the warrant was a description of Mr. Dequasie's residence, the observation that several people were inside the residence, and Mr. Dequasie's unexplained association with Giuseppe Wallace, whom the United States argues is an alleged drug dealer. The description and location of the residence are exactly the type that the Fourth Circuit found insufficient to support probable cause in *Wilhelm*. An observation of people inside does not in any way provide corroboration of a suspected crime. Finally, there is no discussion in the affidavit of whom Mr. Wallace is, for what crimes he was investigated, what the nature of the "association" was, or any other evidence to support an inference of any criminal activity on the part of Mr. Dequasie. In fact, the government cannot show that Magistrate Payne had any information at all concerning Mr. Wallace. Because this case involves the same lack of independent verification that occurred in *Wilhelm*, this affidavit sorely lacks adequate corroboration of probable cause.

Furthermore, there are a number of inconsistencies in Detective–Corporal Sizemore's statements that indicate the ab-sence of an "objectively reasonable law enforcement activity." *See Wilhelm*, 80 F.3d at 116. In this case, Sizemore concluded his affidavit in support of the first warrant by stating "[g]iven the severity of this situation it appears likely that MS [sic] Bandy's life may be in jeopardy if she continues to stay at this residence." The United States relies heavily upon this concern for Lora Bandy's safety in its supplemental response. Of course, as noted above, there was no independent corroboration that Ms. Bandy was at the residence or endangered there prior to obtaining the warrant. Tiffany Mason was not questioned to confirm her story or her reliability. The only possible corroboration comes from Detective–Corporal Brown's observations of "several subjects" in the residence. If Sizemore was objectively concerned that Lora Bandy's life may be in danger, the officers could have taken action when observing the residence prior to seeking the warrant. Certainly Brown could have, at the least, knocked on the door and asked to speak with Lora or inquired as to her whereabouts.

Secondly, Sizemore's application for the first warrant seeks to find Lora Bandy and Tiffany Mason. The United States even argued before the Court that perhaps Tiffany Mason was not interviewed prior to the first warrant because she was at the Dequasie residence. This is contrary to the United States Response to Defendant's Motion to Suppress Evidence wherein the United States stated "[f]rom interviews with various members of the Bandy family, detectives learned that Lora Bandy and Tiffany Mason went to defendant's residence, *but that only Ms. Mason returned.*" (United States Response to Defendant's Motion to Suppress Evidence, 5) (emphasis added).[2]

---

**2.** The Court notes that these two inconsisten-   cies, especially the first one, indicate that this

■ The affidavit given in support of the application for the first warrant was a "bare bones" affidavit, devoid of corroborated facts from which the magistrate could have determined probable cause. The granting of a warrant on such thin and unreliable evidence demonstrates that the magistrate in this case acted as nothing more than a "rubber stamp." The United States, in arguing in support of the warrant, stated that the magistrate had worked with both the Fayette County Sheriff's Department and Detective–Corporal Sizemore for a long time and likely knew of their veracity and experience. Such an argument may have been appropriate if Sizemore had given any independent facts to support the warrant. As it were, the United States essentially argued that Magistrate Dale Payne granted the warrant merely because Sizemore requested it. This is the definition of a "rubber stamp."

Given the "bare bones" affidavit in this case that completely lacked the indicia of probable cause, the absence of an objectively reasonable law enforcement activity, and the magistrate's abandonment of his judicial role, the *Leon* exception is inapplicable in this case.

## IV.

■ Based on the discussion above, it is clear that there was not probable cause to issue a warrant based on the information presented to the magistrate. As stated in *Wilhelm*, "[t]he Fourth Circuit has explained that in evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration." *Wilhelm*, 80 F.3d at 119 (citing *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir.), *cert. denied*, 510 U.S. 983, 114 S.Ct. 485, 126 L.Ed.2d 436 (1993)). In this case, as discussed above, not only did the first affidavit provide no indication of the informant's reliability, the second affidavit actually referred to the informant's lack of reliability. As was the case in *Wilhelm*, "[u]pholding this warrant would ratify police use of an unknown, unproven informant—with little or no corroboration—to justify searching someone's home." *Wilhelm*, 80 F.3d at 120.

Without probable cause to justify the first warrant and without application of the *Leon* exception, the fruits of the first warrant are excluded.

## V.

The next issue is whether the invalidation of the first warrant should cause the exclusion of the firearm found pursuant to the second warrant. On this point the law is clear:

The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search and of testimony concerning knowledge acquired during an unlawful search. Be-

---

is not a case of "objectively reasonable law enforcement activity" as discussed in *Wilhelm*. As will be discussed below, the United States does not challenge that the second warrant was entirely based on the fruits of the first warrant, thus negating detailed discussion of the second warrant here. The Court does note, however, a significant inconsistency in the second warrant. The affidavit for the second search warrant states that while serving the first warrant, Sizemore "observed a small quantity of green vegetation which appeared to be marijuana." This sighting, along with an odor of marijuana and two cell phones were the chief basis for the second warrant. Surprisingly, no green vegetation or marijuana was seized in the second search. It is highly unlikely that this evidence was disposed of prior to the second search considering Sizemore states in the "Action Taken" report that he "left personnel at Mr. Dequasie's residence to secure the scene and prevent the destruction of evidence."

yond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint." *Murray v. United States,* 487 U.S. 533, 536–537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (citations omitted).

In its supplemental response, the United States asserts "[t]he evidence supporting Magistrate Payne's finding of probable cause was discovered by the lawful execution of a prior search warrant." The United States does not assert that the evidence that served as the basis of the second warrant, namely the marijuana observed and smelled and the two cell phones, had any independent source so as to avoid exclusion of the proceeds of the second search. *See Murray,* 487 U.S. at 537, 108 S.Ct. 2529. Instead, the United States relies solely on evidence obtained as a result of the first warrant to support the second warrant.

 As discussed above, the first warrant was invalid. Therefore, under the exclusionary rule, the proceeds of the first warrant cannot be used to support the application for the second warrant. *See Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Since the second warrant was based solely on evidence obtained in the first warrant, along with the otherwise uncorroborated statements of Tiffany Mason, the evidence seized under the second warrant must be excluded as well.

### CONCLUSION

The *Leon* exception is inapplicable to the first warrant, which was not supported by probable cause. Thus, the first search was based on an invalid warrant. Since the second warrant was the product of the first search, the proceeds of the second warrant are excluded as fruit of the poisonous tree. The Defendant's motion is hereby **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshal's Service and to publish it on the Court's website.