OSTEEN, Senior District Judge,
dissenting.
I agree with the majority opinion that the warrant was not overbroad. I disagree with the conclusion that there was probable cause to support the issuance of a search warrant. Because the link between Culbertson’s possession of the images in the late 1990’s and the possibility of the presence of the images in Culbertson’s home in 2004 is too speculative, I respectfully dissent from the majority’s conclusion that Officers Murphy and Milefsky are entitled to qualified immunity.
The first step in determining whether a defendant is entitled to qualified immunity is a determination of whether a right has been violated. Washington v. Wilmore, 407 F.3d 274, 281 (4th Cir.2005). Although the majority found no such violation, I disagree because the search warrant was not supported by probable cause. To determine whether a search warrant is supported by probable cause, the magistrate issuing the warrant must “make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... [,] there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). “When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant.” United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir.1996).
I begin with the observation that the affidavit contained no direct evidence that Culbertson had the sought-after images in his home in 2004 or at any other time, and the record indicates that there is no such evidence. No one involved in the matter ever saw the images at the home or learned that they were there. Instead, to conclude that there was probable cause that Culbertson had the images in his home in 2004, the majority relies on three items of information: (1) the fact that Culbertson retained the images between 1998, when he showed them to Mills, and the time he testified before a House of Representatives subcommittee in 2000; (2) state *313 ments made by Culbertson that the request for the images put him in a bad position and that he could not disclose whether he remained in possession of them; and (3) Detective Easley’s statement that an individual in possession of such unique items was unlikely to give up possession. These items, either alone or in combination, are far too speculative to support a finding of probable cause that Culbertson had possession of the images in 2004, and they provide nothing to link the images to Culbertson’s home.
The fact that Culbertson had retained the images between 1998 and his testimony before the congressional committee does not support such an inference. The affidavit contains very little detail on the matter. Although the record now shows that Culbertson testified in 2000, the affidavit indicates only that Easley saw the images on August 26, 1998, and that Culbertson had turned a copy over to the House Judiciary Committee several years before the affidavit was produced. These two facts give rise to the inference that Culbertson retained the images for an unspecified period of time under unspecified conditions, but they do not support the inference that Culbertson continued to possess the images anywhere, much less at his home, for another unspecified period of time under other unspecified circumstances.
I turn next to Easley’s statement that, in his experience, “a person in possession of items of this magnitude and uniqueness is unlikely to dispose of or destroy the information.” This statement is less a piece of information that supports a finding of probable cause than a conclusion that, in Easley’s opinion, the other facts support such a finding. Easley’s statement is unhelpful for two reasons.
To the extent that the statement is relevant because of Easley’s status as a law enforcement officer, it adds no evidentiary weight for the required finding. There is no question that in many situations a law enforcement officer’s experience is highly relevant to a determination of probable cause. See, e.g., United States v. Collins, 412 F.3d 515, 518 (4th Cir.2005) (finding that officers had probable cause to make an arrest when, in light of their experience, the defendant’s behavior suggested he possessed illegal drugs). An officer’s experience with criminal activity, such as drug dealing, will provide him with insight unavailable to even experienced individuals outside the profession. This case, however, provides a unique situation that involved no criminal activity, and it is not obvious how an officer’s experience might be more valuable than that of someone in a different profession. It is unlikely that Easley, in his law enforcement experience, had ever encountered a situation similar to this one. If he had, he should have provided more detail to allow the magistrate to evaluate the strength of his statement. If he had no special experience, his statement is one of opinion and should not weigh in favor of a finding of probable cause. See Gates, 462 U.S. at 239, 103 S.Ct. 2317 (“[A magistrate’s] action cannot be a mere ratification of the bare conclusions of others.”). A reasonable magistrate cannot, without further information, assume that a law enforcement officer has specialized experience with matters outside the limits of ordinary law enforcement experience and training.
To the extent that the information is evaluated independently of Easely’s experience, it is not an inference from facts but mere speculation. “[A] guess, based not on specific and reliable facts but on a broad generalization” is insufficient to support the issuance of a search warrant. Doe v. Broderick, 225 F.3d 440, 452 (4th Cir.2000). It may well be true that many *314 people retain unique things, but it is also true that many people do not make an effort to retain, on their home computers, computer files from jobs they held years before. There is no evidence in the affidavit suggesting that Culbertson did, in fact, perceive the images as something he personally wanted to retain indefinitely. There is no evidence that he attached particular value to them.[1] There is no evidence in the affidavit that Culbertson was still involved in investigating the Oklahoma City bombing or that these images were of particular use in that investigation. In short, even assuming that Easley may have made a true statement about the way some people behave, it is only speculation that Culbertson behaved that way in this instance, and such speculation is insufficient to support a finding of probable cause.
Finally, the statements made by Culbertson provide no probable cause that Culbertson possessed the images at his home in 2004. The majority refers to two statements Culbertson made to different people.[2] The first is Culbertson’s statement to Easley that “it was going to be a ‘tight rope for [Culbertson] to walk.’ ” The second is Culbertson’s refusal to confirm or deny his possession of the images during his telephone conversation with Easley. These statements are of very low probativity regarding Culbertson’s possession of the images.
For both statements, there are many ways that they could be interpreted. The majority’s interpretation is that Culbertson had the images and did not want to give them to Nichols’s attorneys. Even under that interpretation, the statements contain nothing to link the images to Culbertson’s home. A more plausible interpretation of the statements is that Culbertson did not want to be placed in the position of having to reveal information about the source of the photographs, regardless of whether they were in his possession at that time. Another plausible interpretation is that Culbertson did not want to have any further connection with the Nichols trial but was afraid that he would be forced in by circumstances beyond his control. Both of these alternatives are supported by the facts available to Easley, though, for some reason, not provided to the magistrate. They are offered here only as examples of ways those statements could be understood, and there are many other possibilities. It would not have been possible for Easley to produce information suggesting that all of the possible innocent interpretations of Culbertson’s ambiguous statements were false. Nonetheless, because the statements were so readily subject to various interpretations, Easley should have offered an explanation of why his preferred interpretation was in some way better than the alternatives. To be fair to Easley, he did not, in the affidavit, explicitly state that he personally believed those statements indicated that Culbertson still had possession of the images. In fact, he offered very little context for the statements.[3] Without such *315 context, no reasonable, disinterested magistrate could conclude that the statements were likely to mean that Culbertson had the images. They do not create a “fair probability” that the images would be found in Culbertson’s home.
Even if the magistrate read the statements to indicate that Culbertson likely possessed the images, such a reading would not support a finding of probable cause. The Supreme Court has stated that “a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.” Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also United States v. Alexander, 835 F.2d 1406, 1409 n. 3 (11th Cir.1988) (“[A] defendant’s refusal to consent to a search cannot establish probable cause to search.”). Culbertson’s statement about a tightrope is no more than an expression that he did not want to cooperate with the investigation, and his statement to Easley was clearly such an assertion. Furthermore, these statements are the only pieces of information in the affidavit dating from 2004. Thus, the information in the affidavit can be summarized as asserting that Culbertson had the images in the late 1990’s and refused to cooperate in 2004. Just as Culbertson’s refusal to cooperate could not serve as a basis for a finding of probable cause that he was subject to seizure, it should not serve as a basis for a finding of probable cause to search his home in 2004.
The purpose of the analysis is not to dissect the information in the affidavit by showing that each of the statements has a potentially innocent interpretation. “[I]nnocent behavior frequently will provide the basis for a showing of probable cause.... ” Gates, 462 U.S. at 245, 103 S.Ct. 2317 n. 13. Nonetheless, when viewed in light of the totality of the circumstances, the information suffers from the same deficiency suffered by each individual part. There is no specific or reliable fact that could empower an impartial observer to do more than conjecture on the meaning of the rest of the available information. After examining the evidence provided by Easley to the magistrate in his affidavit, I conclude that it was certainly possible that Culbertson had the images in his home in 2004. Nonetheless, that conclusion relies entirely on a particular interpretation of ambiguous statements and speculation about human nature. Although the standard of probable cause is not a high one, it calls for more than was provided to the magistrate.
Having concluded that the warrant was invalid, I would further conclude that Officers Murphy and Milefsky were in possession of sufficient information to know that the warrant lacked probable cause. The second step in determining whether a defendant is entitled to qualified immunity is whether the right violated was clearly established at the time of the violation. Wilmore, 407 F.3d at 281. As applied to warrants, qualified immunity should be denied when “the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.” [4] Malley v. Briggs, 475 U.S. 335, *316 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Clearly, the affidavit lacked any direct evidence that the images were in Culbertson’s home. Any conclusion to that effect drawn from the information in the affidavit was only speculation. Thus, it is a necessary conclusion that the affidavit is completely lacking in indicia of probable cause for Culbertson’s home to be searched. Murphy and Milefsky, who were familiar with the details of the investigation and fully informed about the contents of the warrant application, should have been objectively aware that the level of speculation involved in the warrant could not support a finding of probable cause, even if a magistrate issued the warrant. They did have a subjective belief that it was likely Culbertson was in possession of the images, but the lack of a factual basis for such a belief, especially with respect to the location of the images, renders it unreasonable. As a result, qualified immunity should be denied. I would therefore affirm the trial court’s opinion.

. While I agree with the majority that historical film may be valuable, there is no evidence that the three digital still images here have any particular value. The value of the Zapruder film is probably not a good indicator of the value of these images. Further, even assuming substantial value in the images, such value does not permit an inference that the valuable property would have been kept at Culbertson's home. On the contrary, value may import the opposite inference: that they would have been kept in a safer place.

. A third statement found in the affidavit, made by Culbertson to defense attorney Mark Earnest, is subject to the same analysis as these two statements.

. Among the information not included in the affidavit was a portion of the conversation between Easley and Culbertson in which Cul *315 bertson affirmatively stated that the images were not on his computer. He also indicated that the images probably did not exist anymore, but, if they did, they would be in an archive belonging to a former member of Congress. Although there is no evidence that these statements were intentionally and wrongfully omitted, it is difficult to understand why they would not have been included, since they would have been valuable information for the magistrate to consider.

. This is not to exclude the possibility that some officers participating in such a search under an invalid warrant may be entitled to qualified immunity by reason of their limited participation in the execution of the warrant.