UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1923

ROY ROGERS,

            Plaintiff - Appellee,

       and

DAWN LINDSAY,

            Plaintiff,

       v.

CHRISTOPHER STEM,

            Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.    Anthony J. Trenga, District Judge.  (1:12-cv-00976-AJT-JFA)

Argued:  September 16, 2014          Decided:  November 6, 2014

Before DUNCAN, AGEE, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.    Judge Duncan wrote the opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED:** Robert A. Dybing, THOMPSON MCMULLAN PC, Richmond, Virginia, for Appellant.  Victor M. Glasberg, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Mark R. Colombell, THOMPSON MCMULLAN PC, Richmond, Virginia; Yvonne S. Gibney, Senior Assistant County Attorney, OFFICE OF

THE COUNTY ATTORNEY, Hanover, Virginia, for Appellant. Bernadette Armand, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Defendant-Appellant Christopher Stem ("Officer Stem"), an investigator with the Hanover County Sheriff's Office ("HCSO") Narcotics Unit in Hanover, Virginia, appeals the district court's denial of his motion for summary judgment based on qualified immunity. Plaintiff-Appellee Roy Rogers ("Rogers"), manager of Custom Blends Tobacco Store ("Custom Blends") in Hanover, Virginia, brought a 42 U.S.C. § 1983 action against Officer Stem in his individual capacity, alleging that Stem arrested him in violation of the Fourth and Fourteenth Amendments to the United States Constitution because Stem lacked probable cause to support the warrant issued for Rogers's arrest.[1] The district court found that Officer Stem lacked probable cause and was not entitled to qualified immunity. For the reasons that follow, we affirm.

---

[1] Dawn Lindsay, a store clerk at Custom Blends, was also arrested with Rogers and charged with the same violations of Virginia law. Like the charges against Rogers, the charges against Lindsay were dismissed at a preliminary hearing. Lindsay also filed a § 1983 claim against Officer Stem, but voluntarily dismissed her claim on January 15, 2013.

I.

A.

Rogers was the manager of Custom Blends at all times pertinent to this appeal. The store sells tobacco and incense products. The incense products include "air freshener sprays, car vent deodorizers, incense candles, incense sticks, incense cones, and incense burners with aromatic oils, aromatic solids or herbal incense to be heated therein." Rogers v. Stem, No. 1:12-cv-976 (AJT), 2013 WL 3338651, at *1 (E.D. Va. July 2, 2013); J.A. 468. This case concerns Custom Blends's herbal incense products, particularly one called "Bayou Blaster."

In early 2011, law enforcement agencies began recognizing herbal incense as a source of synthetic cannabinoids (also known as "synthetic marijuana" or "Spice"). In March 2011, the Virginia General Assembly enacted Va. Code Ann. § 18.2-248.1:1 ("the Virginia statute" or "the statute"), which criminalizes the possession, sale, distribution, and manufacture of synthetic cannabinoids. Id. § 18.2-248.1:1 §§ (B)–(C), (E). The statute identifies substances containing synthetic cannabinoids in two ways. First, section (A) lists a number of chemical compounds specifically banned by the statute--the inclusion of which in any detectable amount renders a substance subject to the statute. Second, section (F) criminalizes substances that meet

4

certain criteria, but are not explicitly listed in section (A).

The full text of section (F) provides:

> Any drug not listed in this section or the Drug Control Act (§ 54.1-3400 et seq.), which is privately compounded, with the specific intent to circumvent the criminal penalties for synthetic cannabinoids, to emulate or simulate the effects of synthetic cannabinoids through chemical changes such as the addition, subtraction or rearranging of a radical or the addition, subtraction or rearranging of a substituent, shall be subject to the same criminal penalties as for synthetic cannabinoids.

Va. Code Ann. § 18.2-248.1:1(F) (2011).[2] In other words, section

(F) criminalizes substances that were (1) privately compounded,

---

[2] The Virginia General Assembly amended the statute in 2012 to expand the list of chemical compounds in section (A). See Va. Code Ann. § 18.2-248.1:1 (2012); J.A. 30–31. The General Assembly repealed the statute in 2014 and added synthetic cannabinoids (now termed "cannabimimetic agents") to the Virginia Code's list of banned Schedule I substances. See Va. Code Ann. § 54.1-3446(7) (2014) (listing as Schedule I substances the chemical compounds from the repealed statute's section (A), id. § 54.1-3446(7)(b), as well as substances that fall within any of a number of "structural classes," id. § 54.1-3446(7)(a)).

Another section under the same chapter bans "controlled substance analog[s]." See id. § 54.1-3456. This section appears intended to serve a function analogous to the function that the General Assembly likely intended section (F) of the repealed statute to serve. It bans substances not listed under Schedule I that mimic Schedule I substances, with the following language:

> A controlled substance analog shall, to the extent intended for human consumption, be treated, for the purposes of any state law, as a controlled substance in Schedule I or II. A controlled substance analog shall be considered to be listed on the same schedule as the drug or class of drugs which it imitates.

5

(2) with the specific intent to avoid the criminal penalties for synthetic marijuana, (3) to mimic the effects of synthetic marijuana, (4) through chemical changes.

Following the passage of the Virginia statute, the HCSO began visiting tobacco shopkeepers in the county to inform them of the new law. On April 13, 2011, two members of the HCSO, an officer and an investigator, visited Custom Blends and spoke to the store clerk. During the visit, the officer and investigator confiscated various herbal incense products as well as two packets containing sample products. The sample products-- labeled "K2" and "Euphoria 5X"--were found in the store's back office and were not being offered for sale. The Virginia Department of Forensic Science ("DFS") tested the confiscated materials. Both sample products tested positive for section (A) substances, while the other items confiscated from the store tested negative. Rogers, 2013 WL 3338651, at *2 & n.8; J.A. 470-71, 71 n.8.

---

(continued)
Id. Unlike section (F), this catchall provision does not require private compounding or a specific intent of the private compounder.

That the General Assembly later repealed the statute at issue need not alter our analysis. As will be discussed below, Officer Stem was chargeable with knowledge of the law in place at the time of the events leading to this case.

Officer Stem is an investigator for the HCSO. In this capacity, he has received special training in the "identification, properties, and chemical composition of various drugs, including synthetic cannabinoids." Appellant's Br. at 3. Following the April 2011 visit, the HCSO began an undercover investigation of Custom Blends, led by Officer Stem. On June 9, 2011, Officer Stem purchased 1.5 grams of herbal incense labeled "Bayou Blaster" for $37.99. DFS tested the incense and determined that it contained the chemical compound AM-2201. Id. at 6. In 2011, section (A) did not include AM-2201 in its list of banned substances.[3] On subsequent visits to Custom Blends, Officer Stem purchased an additional quantity of Bayou Blaster, and another investigator purchased an herbal incense product labeled "Hayze Train Wreck." Both officers purchased glass smoking pipes that were on display for sale near the herbal incense products. See Rogers, 2013 WL 3338651, at *3; J.A. 472; Appellant's Br. at 7. Subsequent DFS lab tests confirmed that none of the products purchased from Custom Blends by Officer Stem or any other HCSO officer contained any section (A) substance. Rogers, 2013 WL 3338651, at *3; J.A. 472.

---

[3] The Virginia General Assembly added AM-2201 to the section (A) list in 2012. See Va. Code § 18.2-248.1:1 (2012); J.A. 30–31. The Virginia Code now classifies AM-2201 as a cannabimimetic agent banned under Schedule I. Va. Code Ann. § 54.1-3446(7)(b).

7

Officer Stem consulted with the Hanover County Commonwealth Attorney's Office to review the evidence obtained from Custom Blends and to receive guidance "regarding the interpretation and application" of the Virginia statute. Appellant's Br. at 8. Stem then prepared an affidavit to support a search warrant for Custom Blends. In the affidavit, Officer Stem asserted that he had made undercover purchases of "Spice"--referring to Bayou Blaster--from Custom Blends. The affidavit also noted that Custom Blends had been notified of the Virginia statute, which Stem described as "ma[king] 'Spice' and any product sold as 'Spice' illegal." J.A. 365.

The magistrate issued the search warrant on September 8, 2011, and the HCSO conducted a search of Custom Blends the same day. During the search, Officer Stem spoke with Rogers, who acknowledged that he was the manager of the store and that he maintained records--including toxicology reports accompanying some of the herbal incense products--in his office at the store. See Rogers, 2013 WL 3338651, at *3; J.A. 473. Rogers also pointed out that the incense products sold by Custom Blends were marked "not for human consumption." Rogers, 2013 WL 3338651, at *3; J.A. 473.

Following the search, Officer Stem, again in consultation with the Hanover County Commonwealth Attorney's Office, applied for an arrest warrant for Rogers. In support, Stem offered his

8

own sworn oral statements as well as the affidavit he had submitted with the search warrant application. The magistrate issued the arrest warrant, and Rogers was arrested for "conspiracy and possession with intent to distribute synthetic cannabinoids." Id. at *4; J.A. 474.

B.

The Hanover County General District Court dismissed the charges against Rogers at the preliminary hearing stage on February 17, 2012. Roughly six months later, on August 30, 2012, Rogers filed a complaint under 42 U.S.C. § 1983 against Stem, alleging that Stem arrested him in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Officer Stem moved for summary judgment on the grounds that he had probable cause to arrest Rogers--citing the evidence his investigation had produced from Custom Blends and his consultations with the Hanover County Commonwealth Attorney's Office--and in the alternative, that he was entitled to qualified immunity because a reasonable officer in Stem's position could have believed he or she had probable cause to arrest Rogers. See Mem. Supp. Def.'s Mot. Summ. J., Rogers, 2013 WL 3338651 (No. 1:12-cv-976 (AJT)).

The district court denied Officer Stem's motion for summary judgment. The court found that, because all of the lab tests of products sold by Custom Blends came back negative for section

9

(A) substances, Rogers's arrest could have been based only on a section (F) violation. The court concluded that Officer Stem lacked probable cause to arrest Rogers under section (F), and that the arrest therefore violated the Fourth and Fourteenth Amendments. In addition, the court found that Officer Stem was not entitled to qualified immunity. The court reasoned that section (F)'s requirement of the compounder's specific intent was clear on its face, a reasonable officer in Stem's position would have known that he did not have evidence of the compounder's specific intent, and without evidence of that "critical aspect" of section (F), a reasonable officer could not have believed he had probable cause to arrest Rogers under that provision. See Rogers, 2013 WL 3338651, at *9; J.A. 486. This appeal followed.

## II.

Interlocutory orders, such as denials of qualified immunity, are typically not appealable. However, when a qualified immunity determination presents a question of law, rather than a disputed question of fact, it may be immediately appealed. See Iko v. Shreve, 535 F.3d 225, 234 (4th Cir. 2008).

The two issues presented here are questions of law: whether Officer Stem established, as a matter of law, that he had probable cause to believe that Rogers committed the charged

10

offenses, and if not, whether Officer Stem is entitled to qualified immunity. Therefore, our review of Officer Stem's interlocutory appeal is proper.

## III.

That the two issues on appeal present questions of law also determines the standard of review. We review questions of law, including probable cause and qualified immunity determinations, de novo. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996); Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

We also review de novo a district court's resolution of a motion for summary judgment. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). The standard requires that we "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."[4] Iko, 535 F.3d at 230 (quoting Scott v. Harris, 550 U.S. 372, 378 (2007)). Summary judgment is appropriate if "there is no genuine issue as to material fact and . . . the moving party is entitled to

---

[4] Officer Stem argues that under the Eastern District of Virginia's Local Civil Rule 56(B), Rogers was required to respond to Stem's proffered facts with a list of disputed facts. We note, as did the district court, that Rogers did not do so. While, in many cases, a party's failure to comply with this Local Rule could complicate the district court's factual determinations, and thus affect the record on appeal, that is not the case here, as we accept Stem's proffered facts.

11

judgment as a matter of law." Shaw, 13 F.3d at 798 (quoting

Fed. R. Civ. P. 56(c)) (internal quotation mark omitted).

We consider each of the two issues on appeal in turn.

A.

Officer Stem contends that he had probable cause to arrest

Rogers because he knew from his training and investigation of

Custom Blends that the store was selling "Spice," and because

his investigation produced circumstantial evidence that Custom

Blends's herbal incense products were intended to be used as

"Spice." We hold that Officer Stem lacked probable cause to

arrest Rogers under section (F)[5] because he failed to produce any

evidence regarding a critical component of that provision--that

the private compounder of the substances at issue had a specific

intent to evade the criminal penalties for synthetic

cannabinoids. We note at the outset the difficulty posed by

requiring culpability to turn on the state of mind of a non-

party. However, the statute created this difficulty, and we may

not rewrite the statute to avoid it.[6]

---

[5] The parties agree that the basis for Officer Stem's arrest of Rogers was an alleged section (F) violation. Indeed, as all of the lab tests performed on Custom Blends's products for sale came back negative for section (A) substances, Officer Stem could have had probable cause only for a section (F) violation.

[6] As we note above, the Virginia General Assembly repealed the statute in 2014, included synthetic cannabinoids as banned

12

Officer Stem argues that he gathered sufficient circumstantial evidence of the compounder's specific intent to conclude that Custom Blends's herbal incense products were "formulated and marketed to smoke and get high." Appellant's Br. at 15. In particular, Officer Stem presents four bases for asserting that such intent may be inferred: (1) the products' marketing; (2) the products' pricing; (3) that one product for sale contained AM-2201, a chemical compound that the Virginia General Assembly later added to the list of substances banned under section (A); and (4) that the products came with toxicology reports and labels marking them "not for human consumption."

Officer Stem's arguments and his conflation of sections (A) and (F) highlight the problem with the statute. We do not question Officer Stem's probable cause to believe that several of Custom Blends's herbal incense products were "Spice." However, he provided no evidence indicative of any private compounder's specific intent.

First, as to marketing, Officer Stem points to the names of the products, such as "Bayou Blaster" and "Hayze Train Wreck," which he argues connote "getting high." Appellant's Br. at 18.

_____

(continued)
Schedule I substances, and amended the accompanying catchall provision. See supra note 2.

The names may well be suggestive, but they do not suggest that the products' compounder had the specific intent to avoid criminal prosecution. Rogers points out that many types of benign and legal products are marketed with "alluring names suggestive of abandoned behavior." Appellee's Br. at 8. For example, high-end fragrances by well-respected companies Yves Saint Laurent and Fresh are marketed with the names "Opium" and "Cannabis," respectively.

In addition, Custom Blends's herbal incense products appear to have been labeled by the supplier or wholesaler, rather than by the compounder. See J.A. 351 (photograph of Bayou Blaster label); Appellee's Br. at 18 n.13 (containing the text of the same Bayou Blaster label, including what appears to be the name of the wholesaler, Da Scents LLC, and its email address, Aroma@DaScents.com). Therefore, even if the products' names suggested a specific intent to evade criminal penalties, it would not appear to be attributable to the compounder.

Second, the products' pricing determinations are even further removed from the compounder. Stem presents no evidence to suggest that pricing is anything other than a retail determination.

Third, Officer Stem argues that Bayou Blaster would not have contained the chemical compound AM-2201 if the compounder meant it to be used as herbal incense. However, when Stem

14

purchased Bayou Blaster in June 2011, section (A) did not cover AM-2201. See Appellant's Br. at 6; J.A. 29 (containing the 2011 version of the statute). The Virginia General Assembly added AM-2201 to the section (A) list in 2012. See Appellant's Br. at 6; J.A. 30–31. Stem urges us to conclude that the presence of that substance supports an inference that the private compounder had a specific intent to evade the law. Unlike the marketing and the price, the ingredients of the product do evince choices made by the compounder. But the fact that a substance in the product later became illegal under section (A) tells us nothing about the specific intent of the private compounder, at some indeterminate point in the past and wherever it may have been located, to evade the law of Virginia.

Fourth, Officer Stem urges us to conclude that the products' labeling marking them "not for human consumption" and the toxicology reports accompanying them demonstrate the specific intent of the compounder. Appellant's Br. at 27. However, as Officer Stem notes, these products--labeled and accompanied by toxicology reports--were delivered by the distributor. Id. The distributor's knowledge or intent would be relevant under section (F) only if Officer Stem alleged that the distributor was also the private compounder. He does not.

We recognize that the Virginia statute was difficult to enforce. And we recognize that Officer Stem, whose job it was

15

to enforce that law, faced a challenging task. Yet, it is plain that Officer Stem provided no evidence of a private compounder's specific intent to circumvent the criminal penalties imposed by the statute. Though he had probable cause to believe that the substances could emulate the effects of synthetic cannabinoids, he lacked any reasonable belief about the compounder's specific intent, which was critical to culpability under the statute. We therefore agree with the district court that Officer Stem lacked probable cause to arrest Rogers.

B.

Officer Stem next contends that, even if this court holds that he lacked probable cause to arrest Rogers, he is nonetheless protected by qualified immunity. He argues that a reasonable officer with his training and experience could have believed he or she had probable cause to arrest Rogers, and that it was not clearly established that his conduct violated Rogers's constitutional rights. However, because section (F)'s requirements are clear, and because it is clear that Officer Stem failed to gather evidence supporting violation of them, we conclude that Rogers's rights under these circumstances were clearly established. Because culpability under section (F) turns on the private compounder's specific intent, and because Officer Stem lacked any information regarding the private compounder's intent, a reasonable officer in Stem's position

16

could not have believed he or she had probable cause to arrest Rogers. Thus, we conclude that Officer Stem is not entitled to qualified immunity.

In qualified immunity cases, we must identify with particularity the right that the official is alleged to have violated. See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Rather than characterizing it as the general right to be free from arrest without probable cause, the right at issue here is the right to be free from arrest under the circumstances presented in this case. See id. ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (emphasis added)). In other words, Officer Stem loses the protection of qualified immunity if it would have been clear to a reasonable officer in his position that he or she lacked probable cause to arrest Rogers for a section (F) violation. See Pritchett v. Alford, 973 F.2d 307, 313-14 (4th Cir. 1992) ("[T]he right in issue was the right not to be arrested except upon probable cause to believe that [the plaintiff] had violated [the regulation at issue]."). That is the case here. Officer Stem is chargeable with knowledge of the law. See Harlow v.

<u>Fitzgerald</u>, 457 U.S. 800, 818–19 (1982).[7]  The statute was clear that section (F) required the compounder's specific intent to evade the penalties for synthetic cannabinoids, and Officer Stem lacked any evidence supporting that requirement.

Officer Stem also argues that the magistrate's issuance of the search and arrest warrants shows that Stem acted reasonably in interpreting and seeking to enforce the law.  In typical cases, "the fact that a neutral magistrate . . . issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."  <u>Messerschmidt v. Millender</u>, 132 S. Ct. 1235, 1245 (2012).  However, it does not necessarily end the inquiry.  The Supreme Court has recognized an exception "where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  <u>Id.</u> (quoting <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984)).

Officer Stem's warrant application cited the Virginia statute as the basis for the suspected offenses, but the supporting affidavit provided only a series of conclusory

---

[7] Officer Stem argues that the Virginia statute's lack of judicial interpretation since enactment compels us to conclude that the right was not clearly established.  However, a statute proscribing certain behavior as criminal may be clear, and the rights underlying it clearly established, without adjudication. <u>See</u> <u>Pritchett</u>, 973 F.2d at 314 (citing <u>Anderson</u>, 483 U.S. at 640).

18

references to Custom Blends's selling "Spice." J.A. 363–65. It did not specify the statutory section--(A) or (F)--under which Officer Stem sought the warrant. Nor did it provide any basis for a reasonable belief that Rogers had violated section (F). It referred only to the products purchased as "Spice," without disclosing that lab results had shown the products lacked any chemical compound identified by the General Assembly as Spice, and without providing any information about the private compounder or its specific intent. In addition, the affidavit mischaracterized the statute itself, asserting that the statute "made 'Spice' and any product sold as 'Spice' illegal." J.A. 365. As the statute clearly requires the presence of certain chemical compounds under section (A) or the specific intent of a private compounder to evade the criminal penalties for synthetic marijuana under section (F), it did not make "any product sold as 'Spice'" illegal.

Accordingly, Officer Stem is not entitled to qualified immunity.

IV.

For the foregoing reasons, the district court's denial of Officer Stem's motion for summary judgment is

AFFIRMED.

19